GEORGE P. STRONG ET AL., Respondents, *v.* AMERICAN CENTRAL LIFE INSURANCE COMPANY, Appellant.

### May 1, 1877.

1. The United States Insurance Company having insured H. & W. $120,000 on a cargo of cotton, reinsured five-sixths of the risk in five companies, — $20,000 in each. There was a total loss, and the original insurer and the reinsuring companies agreed together to contest the claim; the United States Insurance Company to employ counsel and conduct the defence at the expense of all the companies; the reinsuring companies, in case of failure of the defence, each to pay one-sixth of the judgment and of attorneys' fees and expenses. A demurrer to the petition in the suit of the insured having been overruled, the United States Insurance Company and the reinsurers consulted together as to the expediency of compromising the claim, on an offer of the insured to accept one-third of their demand in full payment. The United States Insurance Company determined to compromise, and so informed the reinsurers, and entered into an agreement of compromise with the reinsured, by which it was to assign to them its claim against the reinsuring companies, without prejudice to its right to defend the pending suit. The suit was defended by the attorneys originally employed, without objection on the part of the reinsurers, who had notice of the progress of the cause. Judgment was obtained against the United States Insurance Company. *Held*, in a suit by the assignees of the insured against one of the reinsuring companies on one of the policies assigned under the agreement to compromise, that the contract between the insured and the United States Insurance Company was not a fraud in law; that the question of fraud was one for the jury, and that the agreement was to be considered as one of the circumstances of the case; that, if the judgment against the insurance company was obtained by fraud and collusion, then the record of the judgment was no evidence of plaintiffs' claim; that the *onus* is on defendant to show fraud; and that, if the United States Insurance Company and its attorneys did, in good faith, use all honest means in their power to defeat the action, and the reinsurer had notice of the suit, the judgment was conclusive on the reinsuring companies.

2. A judgment against the original insurer is binding upon the reinsuring companies where they had notice of the suit, and an opportunity to defend. The reinsurer can litigate the question of the liability of the insur-

ing company only once, and if the question has been fairly litigated, and the reinsurer made a party by notice, there is an end.

3. The agreement of the original insurer to employ counsel and defend the claim created an agency merely, and established no trust in the technical sense of the word as used in equity.

4. The reinsuring companies, by allowing the defence to proceed under the management of the counsel already employed by the insurer under their agreement, made those attorneys their own. To revoke the agency of the United States Insurance Company, in defending the suits, required positive action on the part of the reinsuring companies.

5. The measure of damages, in the suit against the reinsuring companies, is the total amount of reinsurance, and not merely the amount which the reinsured company may have paid.

6. The liability of the reinsuring companies is not affected by the insolvency of the reinsured company, or by any release of liability which it may have obtained in a compromise.

APPEAL from St. Louis Circuit Court.

*Affirmed.*

MARTIN & LACKLAND, for appellant: No privity of contract exists between the original insured and the reinsurer. — *Herkenrath* v. *American Mutual Ins. Co.*, 3 Barb. Ch. 63 ; *Carrington Ins. Co.*, 1 Bosw. 152. In an action against the reinsurer by the insurer, the former has the right to make the same defences which the latter could make against the original assured. — *Eagle Ins. Co.* v. *Insurance Co.*, 9 Ind. 443 ; *Yonkers Fire Ins. Co.* v. *Coffman*, 6 Robt. 316 ; *New York Central Ins. Co.* v. *Insurance Co.*, 20 Barb. 468. When a loss happens, the insured is not bound to wait for judgment or payment before he sues the reinsurer. — *Hone* v. *Mutual Safety Ins. Co.*, 1 Sandf. 137 ; *Blackstone* v. *Allemania Ins. Co.*, 4 Daly, 299 ; *In re Republic Ins. Co.*, 8 B. R. 197 ; *Norwood* v. *Resolute Ins. Co.*, 47 How. Pr. 43. Where the fact constituting fraud is admitted in the replication, it is the duty of the court to declare the fraud, and not leave it to the determination of the jury. — *Lee* v. *Pearce*, 68 N. C. 76 ; *Postmaster* v. *Reuder*, 4 Wall. C. Ct. 178. Ratification. — *Murray* v. *Walker*, 44 Ga. 58 ; *Ketchum* v. *Verdell*, 42

Ga. 534; *Ward* v. *Williams*, 26 Ill. 447; *Reynolds* v. *Davidson*, 34 Md. 662; *Saylor* v. *Carson*, 69 Penn. 81; *Gutzwiller* v. *Lackman*, 23 Mo. 168; *Jenkins* v. *Sampson*, 14 Mo. 364. As to when silence becomes a fact of ratification. — *Langdon* v. *White*, 30 Vt.; *Pearsell* v. *Chapin*, 44 Pa. St. 9. When mere knowledge does not operate as an estoppel. — *Drake* v. *Glover*, 30 Ala. 382; *Hale* v. *Fisher*, 9 Barb. 17; *Chapman* v. *Chapman*, 59 Penn. 214. Measure of damages. — *Mutual Fire Ins. Co.* v. *Andes Ins. Co.*, 4 Ins. L. J. 820; *Ritz* v. *Receiver*, 9 Paige, 568.

JOHN H. RANKIN, for appellant: Trusts and trustees. — *Rea* v. *Copelin*, 47 Mo. 83; *Grumley* v. *Webb*, 44 Mo. 452. Contracts made by an agent for himself, in a matter where he was bound to act for the best interests of the principal, inure to the benefit of the principal. — *Holdridge* v. *Gillespie*, 2 Johns. Ch. 30; *Krach* v. *Sanford*, 1 Ld. Cas. in Eq. 94; Kerr on Fraud, 150 *et seq.*; *Jamison* v. *Glascock*, 20 Mo. 195; *Knabe* v. *Ternot*, 16 La. An. 13; *Walker* v. *Palmer*, 24 Ala. 358; *Matthew* v. *Light*, 32 Me. 305. Principal and surety. — *King* v. *Baldwin*, 2 Johns. Ch. 554; *United States* v. *Simpson*, 2 Penn. 437; *Mills* v. *Stewart*, 9 Wheat. 680; *Buckhead* v. *Brown*, 6 Hill, 640. Ratification. — *Pearsell* v. *Chapin*, 44 Pa. St. 9; 23 Mo. 168; 7 Watts & S. 125; 22 Ala. 249; 1 Pars. on Con. 49. Measure of damages and liability of reinsurer. — *Illinois Ins. Co.* v. *Andes Ins. Co.*, 4 Ins. L. J. 820; *Osgood* v. *Osgood*, 39 N. H. 209; *Little* v. *Little*, 13 Pick. 426; Sedgw. on Dam. 372.

GEO. A. MADILL, for appellant, cited: *Chicago* v. *Robbins*, 2 Black, 418; 4 Wall. 657; *Gardner* v. *Goodyear Dental Co.*, 6 Fisher's Pat. Cas. 329; *Kohn* v. *Louisiana Ins. Co.*, 15 La. 86; *The People* v. *Leland*, 40 Ill. 118.

GEO. P. STRONG, for respondents: Of what facts judgments are exclusive evidence. — *Strong* v. *Phœnix Ins. Co.*, 62 Mo. 289, and cases there cited; 2 Ph. on Ev., 4th Am. ed., 9, note. The rights of a reinsurer are not affected by

the fact of its having reinsured a part of or the entire risk. —
*New York Ins. Co.* v. *Protection Ins. Co.*, 1 Story, 458 ;
*Hastie* v. *De Peyster*, 3 Caines, 190. Measure of damages.
— 62 Mo. 289 ; *Hone* v. *Mutual Safety Ins. Co.*, 2 N. Y.
235, *s. c.*, 1 Sandf. 137 ; *Eagle Ins. Co.* v. *Lafayette Ins.
Co.*, 9 Ind. 443 ; *Blackstone* v. *Allemania Ins. Co.*, 56 N. Y.
104 ; *Norwood* v. *Resolute Ins. Co.*, 36 N. Y. 555.

THOMAS T. GANTT, for respondents : As to the measure
of damages and the liability of the reinsurer. — *Hone* v.
*Mutual Safety Ins. Co.*, 1 Sandf. 137 ; *Blackstone* v. *Alle-
mania Fire Ins. Co.*, 56 N. Y. 104 ; 3 Kent, 279, note ; 2
Ph. on Ins., sub-sec. 1752 ; *Herkenrath* v. *American Mutual
Ins. Co.*, 3 Barb. Ch. 63 ; *Lawless* v. *Collier's Executors*,
19 Mo. 480.

BAKEWELL, J., delivered the opinion of the court.

It appears by the pleadings and evidence in this case that
the United States Insurance Company was the insurer of
Henning & Woodruff, on cotton, to an amount not exceeding
$120,000 on any one cargo, against fire, on an open policy.
Of this risk, five-sixths, or $100,000, was reinsured by the
United States Insurance Company in five several insurance
companies, of which defendant (then called the Atlantic
Mutual) was one ; each of these companies was a reinsurer
to the amount of $20,000. The reinsurance effected with de-
fendant was for so much of any risk as exceeded $100,000
and did not exceed $120,000. The date of this reinsurance
was December 3, 1863.

On June 9, 1864, Henning & Woodruff lost, by fire,
cotton worth $280,000, on the steamer " Progress," on a
voyage on the Mississippi, above Red River. The United
States Insurance Company, on receiving notice of the loss,
and of the claim of Henning & Woodruff, called its rein-
surers together, and informed them that it thought the claim
could be successfully resisted ; that it considered that it had
received no proper notification of the risk, and that no

entry of the shipment had been made on its books; that the alleged contract for insurance on this particular contract lay wholly in parol, and that the insurer was advised that it could not make oral contracts of insurance, nor be held, according to the principles of law, upon implied contracts to insure. (There was never any question as to the amount of liability, if liable at all.) It would not defend alone, but if its reinsurers were willing to join in the defence it would fight the claim. To this the reinsuring companies assented, and they signed the following agreement, drawn up by the attorneys of the United States Insurance Company:

" Whereas a claim is made upon the United States Insurance Company, under open policy and agreement of Henning & Woodruff with said insurance company, for the sum of one hundred and twenty thousand dollars, for cotton burned on the steamer "Progress," on the Mississippi River, on or about the 9th day of June, A. D., 1864; and whereas each of the undersigned insurance companies is bound and liable to the said United States Insurance Company to the amount of twenty thousand dollars on any loss on cotton for which it is liable, as reinsured to it to that amount each; and whereas it is believed both by said United States Insurance Company and the undersigned companies that said claim is illegal and unjust, and the undersigned desire that the same shall be resisted and defended: now, therefore, for that purpose, in consideration of the premises, we agree with said United States Insurance Company that it shall employ and retain such counsel as it may deem proper to consult, and to manage said defence, and that in case said United States Insurance Company shall be successful, and shall not be liable upon or for said claim, then we will each pay our *pro-rata* proportion of said attorneys' fees and costs, if any, and in case said United States Insurance Company shall fail in its defence, and shall be made liable by the judgment of the court

upon or for said claim, then we will each pay our *pro rata*
proportion of such claim and judgment, and of attorneys'
fees and costs.

"St. Louis, July 18, 1864.

"H. W. HOUGH,
"*Sec. Marine Ins. Co.*
"H. M. BLOSSOM,
"*Sec. Globe Ins. Co.*
"C. C. FERGUSON,
"PHŒNIX INSURANCE CO.,
"*By W. H. Pritchart, Sec.*
"SECURITY INS. CO.
"*By W. H. Pritchart, Agt.*"

Henning & Woodruff commenced suit against the United
States Insurance Company, in the St. Louis Circuit Court,
and were driven to a nonsuit by the ruling of that court,
which were sustained on appeal to the Supreme Court.
The claimants, having become residents of New York, com-
menced another action in the Circuit Court of the United
States; and in the spring of 1872 a demurrer to the decla-
ration of plaintiffs was overruled by the court, and the cause
was continued to the September term. This ruling of the
United States court was directly opposed to that of the
State court, which had been sustained by the Supreme
Court of the State, and was to the effect that the parol con-
tract of insurance, which had been set up in the declara-
tion, was valid. The court held the decision of the Su-
preme Court not binding upon it in this respect, — Judge
Treat dissenting on this last point only. 2 Dill. 26. In
February, 1872, the United States Insurance Company col-
lected from the reinsuring companies their proportion of
the fee to be paid to counsel for defending the suit in the
United States Circuit Court. A contingent fee remained
to be paid in case of successful defence. The claimants
(now Henning & Pearce) had been pressing for a com-
promise of this litigation, which had dragged along for

eight years ; and the United States Insurance Company began to lose confidence in its defence.   The position upon which they mainly relied had been taken by the enemy, and they were " demoralized."   Conversations were had with the officers of the reinsuring companies as to the expediency of accepting terms of compromise, and it was understood that the reinsuring companies could all settle and discharge their liability by a present payment of about one-third of what would be recovered in the event of a victory by the claimants.   The defendants determined to fight out the fight, and the United States informed the officers of defendant that it would, if possible, effect a compromise and save itself.

In July, 1872, the following agreement for a compromise was entered into between Henning & Pearce and the United States Insurance Company :

" Whereas Robert M. Henning and Albert Pearce, as surviving partners of Henning & Woodruff, claim that the United States Insurance Company, of St. Louis, Mo., was liable to said Henning & Woodruff, and is liable to said survivors, for and on account of cotton on the steamer ' Progress,' and some barges, in the year 1864, and have sued said insurance company in the Circuit Court of the United States," * * * " and said claim is denied and resisted, and a settlement of any judgment which may be rendered in said suit upon said claim, and also of any suit, judgment, claim, or demand against the United States Insurance Company on account of said cotton, is hereby made and agreed upon, as between said insurance company and said Henning & Pearce, and therefore said company this day pay to said Henning & Pearce $22,000, and assign to them its claim to the proceeds of cotton damaged on the steamer ' Des Arc,' in 1864, which proceeds were in the hands of one D. H. Page, in his lifetime, in New York : now, therefore, in consideration of the premises, the said Henning & Pearce, surviving partners of Henning & Wood-

ruff, agree to bind themselves to release said United States Insurance Company from any judgment which may be recovered in said suit, or in any suit or procedure which may ever be had or made on said claim, or any part thereof, against it; but if any judgment shall be finally recovered in said suit, or in any suit or proceeding for or upon said claim against said company, then said company is to assign and transfer to said Henning & Pearce, or the survivors of them, or their assigns or representatives, all the claim and demand which it may have on the Phœnix Insurance Company of St. Louis, the Atlantic Insurance Company of St. Louis, the Globe Mutual Insurance Company of St. Louis, and the Security Insurance Company of New York, in respect of the reinsurance claimed to have been effected by the United States Insurance Company with said companies respectively, on account of risks taken by the United States Insurance Company on cotton for Henning & Woodruff, which assignments are to be received by Henning & Pearce, their assigns or representatives, in full of any judgment or claim against said United States Insurance Company, and in satisfaction thereof, and said Henning & Pearce shall only pursue any remedy they may elect, and as they choose, under such assignments, which assignments are to be without liability or recourse on said insurance company; provided, however, that in any action or proceedings under such assignments, said Henning & Pearce may use the name of said United States Insurance Company, at their own cost, and protecting the company therefrom, if they elect to do so. But it is agreed and understood that nothing herein is to hinder or prevent the United States Insurance Company from defending or continuing, fully and in all things, to defend said suit, or any suit or proceeding for or on account of said claim. It is further understood that in case said suit is defeated and no recovery is had therein, yet said Henning & Pearce are to keep said $22,000, and said claims for moneys which were in the hands of Page,

and not to refund or repay the same. In witness whereof,"
etc. It was signed by Henning & Pearce; also by the offi-
cers of the United States Insurance Company.

Certainly before the middle of August, and, as nearly as
the time can be fixed by evidence, about ten days or two
weeks after this agreement, the executive officer of defend-
ant heard a rumor of its terms. He at once called at the
office of the United States Insurance Company, and de-
manded to see the contract. He was permitted to care-
fully read and examine it, but not to copy it. He ex-
pressed his surprise and disgust in warm though not un-
courteous terms, and seems to have regarded the agreement
as a fraud upon the rights of his company, — a going over
to the common enemy and selling a comrade out. He said
so as plainly as the respect he entertained for the managing
officer of the United States would permit. Amongst other
things, he said that he considered that this agreement dis-
charged his company from liability; to which the president
of the United States Insurance Company replied that he
thought so too. Meanwhile, the pending suit in the
United States court was defended precisely as before;
the same attorneys, two firms composed of men con-
fessedly at the head of their profession — Glover & Shepley
and Sharp & Broadhead — defended the suit; and it is not
shown that they were in any way wanting in the discharge
of their duty, or that the energies of the defence were in
any respect relaxed. The plaintiffs offered to prove, on the
trial of the case at bar, that the suit was defended in every
respect as if the agreement for a compromise did not exist;
and this evidence was excluded on the objection of the de-
fendant. The executive officer of defendant knew of the
suit, and was present occasionally, for short periods, during
the trial, which lasted several days. Judge Lackland, who
had formerly acted as counsel for defendant in special
cases, was also in court, though he took no part in the
proceedings.

Judgment was obtained in the United States Circuit Court against the United States Insurance Company ; after which that company, in accordance with its agreement, assigned to Henning & Pearce all claims. against defendant and the other reinsurers ; and the plaintiffs in the present action are the assignees of Henning & Pearce.

The instructions given and refused on the trial were substantially as follows. We give them as abridged in the statement of one of the counsel for respondents. They lose nothing by abridgment, and their full legal import is given in every instance.

The following instructions were given for the plaintiffs :

" 1. The court instructs the jury that the judgment rendered in the Circuit Court of the United States in favor of Henning & Pearce, and against the United States Insurance Company, is conclusive as to the liability of the defendant in this case upon its policy of reinsurance, unless the jury, from all the evidence in the case, believe that such judgment was obtained by fraud, or collusion between said Henning & Pearce and said insurance company. And if the jury further believe from the evidence that said policy or claim was assigned to plaintiffs before the commencement of this suit, they will find for plaintiffs.

" 2. That fraud or collusion cannot be presumed, but must be proved by evidence satisfactory to the jury ; and the burden of such proofs is on defendant, but need not be made by direct testimony, but may be inferred by the jury from all the facts and circumstances shown in the cause.

" 3. If the jury find for plaintiffs, they will assess the damages at one-sixth of one hundred and seventy-eight thousand two hundred and eighty dollars, and interest thereon at six per cent per annum from September 24, 1872. And if the jury believe from all the evidence and circumstances of this case that the defendant has unreasonably and vexatiously delayed the payment of this loss,

they may assess additional damages, not exceeding two thousand dollars.

"4. If the jury believe from the evidence that the defendant had notice of the agreement of July 24, 1872, ten or fifteen days after it was made, and with full knowledge acquiesced in the provision therein contained for defending the suit in the United States Circuit Court, or stood by and permitted said United States Insurance Company, and the said attorneys employed by it, to go on and try said cause, and made no effort to secure any other attorneys or to take control of said defence, then said agreement constitutes no bar to this action."

"5. The judgment rendered in the Circuit Court of the United States in favor of Henning & Pearce *v.* United States Insurance Company is conclusive of the liability of the defendant in this case upon its policy of insurance, unless the jury believe from all the evidence that such judgment was obtained by fraud, or collusion between said United States Insurance Company and the said Henning & Pearce; and if they further find that the policy or claim was assigned to the plaintiffs before the commencement of this suit, they will find for the plaintiffs."

The court refused the following instructions asked by the defendant:

"1. That under the terms of the agreement of July 18, 1864, the attorneys employed by the United States Insurance Company were not the attorneys of the defendant in this cause, nor is the defendant bound by their acts.

"2. The agreement of July 24, 1872, is in fraud of defendant, unless defendant assented to it.

"3. If the jury believe, etc., that the agreement dated July 18, 1864, was executed by defendant and other companies; that afterwards, and under this agreement, defendant paid money when called upon to do so by the United States Insurance Company, in order that it might defend a suit, or suits, brought by Henning & Woodruff

against the United States Insurance Company, and otherwise protect defendant's interest, and that under said agreement said United States Insurance Company went on for a time in good faith resisting said claim of Henning & Woodruff; and that afterwards, on or about July 24, 1872, the compromise agreement of that date was made between Henning & Woodruff and the said United States Insurance Company, then the jury is instructed that the said compromise agreement inured to defendant's benefit, and defendant has a right to claim the benefit of it; and if the jury believe that under its provisions the United States Insurance Company was discharged from liability on the paying of the sum of $27,500, and making the assignment in said instrument named, plaintiffs cannot recover.

"4. If, after the making of the agreement of July 24, 1871, and the payment of the money named therein, the United States Insurance Company, at the trial of the cause in the Circuit Court, failed to bring said agreement to the knowledge of the court, the plaintiffs cannot recover.

"5. The burden is on plaintiffs to show that the United States Insurance Company performed the contract of July, 1864, in good faith; and there could be no such performance unless defendant knew and assented to the agreement of July, 1872.

"6. If defendant did not assent or agree to the contract of July 24, 1872, either before or after it was made, the jury must find for defendant. If the jury believe that, after it was made, defendant assented to it, the compromise agreement inured to defendant's benefit, and plaintiffs cannot recover.

"7. Even if, under the other instructions given in this case, the jury find the defendant liable, its liability cannot exceed one-sixth of the amount paid to the United States Insurance Company in July, 1872, without interest.

"8. The United States Circuit Court had no jurisdiction," etc.

"9. If the jury find for plaintiff, they can only hold defendant liable for the excess over $100,000; and if the United States Insurance Company has not paid $100,000, the jury must find for defendant.

"10. By assent to the agreement of July 24, 1872, is meant an assent or approval announced expressly or impliedly to the United States Insurance Company, after a full knowledge of its provisions; and if the jury find from the evidence that when defendant became acquainted with the agreement it denounced the same as a fraud upon its rights, then the assent by defendant to it is not to be presumed from the fact that it had knowledge of the suit in the United States Circuit Court being thereafter prosecuted to judgment.

"11. If defendant did not assent or agree to the agreement of July 24, 1872, the jury will find for the defendant; and the burden is on plaintiffs to show such assent or agreement."

All these instructions were refused, defendant excepting; and the court then gave the following at defendant's instance:

"1. If the jury believe that the judgment of the United States Circuit Court, read in evidence, was obtained in pursuance of the terms of the agreement of July 24, 1872, then it was fraudulently obtained, unless the jury be satisfied from the evidence that defendant ratified or assented to its provisions after it learned them.

"2. If defendant did not assent to or ratify the compromise agreement of July 24, 1872, the jury will find for defendant, and the burden of showing such assent, etc., is on plaintiffs.

"3. By consent to the agreement of July 24, 1872, is meant that assent and approbation which is announced expressly or impliedly, after full knowledge of its provisions; and if, on receiving such knowledge, defendant denounced the same as a fraud on his rights, and never afterward con--

sented to it, then said defendant cannot be presumed to have so assented, because it had knowledge of the pendency of the suit in the United States Circuit Court, and that it was prosecuted to judgment.

" 4. The agreement of July 24, 1872, was a fraud on defendant, and the jury will find for defendant, unless the defendant knew of it and ratified its terms and consented thereto.

" 5. It is admitted by the pleadings that defendant did not know of the agreement of July 24, 1872, until after it was executed.

" 6. The fact that money was paid by defendant to the United States Insurance Company, and by it to the attorneys employed by it, does not render such attorneys the agents and attorneys of the defendant, and no acts or omissions of said attorneys can bind defendant in any way."

There was a verdict and judgment for plaintiffs for $36,101.69, and defendant appeals.

It is ruled in the case of *Strong et al.* v. *Phœnix Insurance Company*, 62 Mo. 289, that, where judgment is rendered against the original insurer, and he has contested the suit, with the advice or acquiescence and for the benefit of the reinsurer, the latter will be bound by the judgment, and for costs and expenses incurred in the defense, though not made a party to the record.

It is manifest that, by the agreement of 1864, the defendant in this case recognized its liability in the event of a recovery against the original insurer, acquiesced in the defence, and appointed the original insurer its agent to conduct the defence and to employ counsel for that purpose. The defence was conducted by the very counsel employed with the knowledge and consent of defendants, and paid with their money, without any objection whatever on the part of defendant, who had actual knowledge of the progress of the cause, and never suggested any change in the

manner of conducting it, nor interfered in any way, either by asking to take part in or to control the defence, or by employing other attorneys, or otherwise howsoever. That they were ready to avail themselves of a verdict in their favor is clear enough; and it is not easy to see on what theory they can be allowed to repudiate their action, now that the result has been adverse. We see no error in this record by which the appellant could be prejudiced in any way, and the verdict is fully warranted by the evidence, and the judgment will not be disturbed.

In our opinion the court erred in regarding the agreement of 1872 as fraudulent in law, and the case was, in consequence, tried upon a theory highly prejudicial to the rights of respondents, but of which appellant cannot complain.

The agreement of 1872 was not a fraud in law; the defence of the suit against the original insurer was carried on in good faith, and by its determination the liability of defendant is fixed.

It is urged by appellant that the contract of 1864 created a special relationship of trust and confidence between the reinsurers and the reinsured; that the United States Insurance Company became thereby a trustee; and that, by its agreement of 1872, it sold out to the common enemy, and, by losing all personal interest in the suit it was employed to defend, became incapable of conducting the defence, and was guilty of a fraud on the rights of defendants in pretending to do so; that the defence, from that moment, as a matter of law, was a sham defence, and the judgment a sham judgment, the litigation between the original insured and the original insurer being, from the date of that agreement, a contest between parties who had really nothing to litigate.

We do not perceive that the agreement of 1864 created any special trust or confidence, imposed any new obligation, or changed the legal relations of the reinsured and the reinsurers.

The original contract of reinsurance was not merged in this agreement. Merger is the absorption of a thing of less importance by a greater, whereby the lesser ceases to exist, but the greater is not increased. The liability created by this policy was neither destroyed nor modified by this agreement. What substantial right or interest of defendant vested in the United States Insurance Company by the agreement of 1864? It is suggested by counsel for appellant that, at the date of the agreement of 1864, the sixty days' time within which notice to the reinsurer should be given having elapsed, and the reinsurers being, therefore, no longer bound by their contract, they, by this writing, waived the formalities of notice, etc., and became bound again,—but on these terms, that they should be liable only when the United States was made liable by a judgment against it. But this is the exact liability of a reinsurer. If the first insurer pay without a suit, the reinsurer can make it show, in a suit, that it would have been made liable. The reinsurer has a right to show the first insurer not liable, but he can litigate this question only once; and if it be once fairly litigated, and the reinsurer made a party by notice, there is an end. The liability, in the last analysis, is from the same source. It is said that the privity between the reinsurers and the reinsured was created by the contract of 1864 alone. On the contrary, the privity consisted in this, that both had insured against the same risk, in favor of different parties. This privity did not depend on any subsequent consent to be bound by any judgment against the United States; it grew out of the contract of reinsurance. Notice of litigation bound the fortunes of this defendant to those of the United States Insurance Company, gave it a right to aid in the defence, and bound it by the judgment, whether it aided in the defence or not.

It would appear that the present risk did not fall under the requirement rendering necessary its entry on the book annexed to appellant's policy; but certain formalities, in

the way of notice, would be conditions precedent to a re-covery by the reinsured against the reinsurers, and these must be either made or waived. In the event of a common defence being decided upon, it is obvious that these would be waived. To comply with them could not be a matter of any material difficulty; but formal notice of a loss is in-consistent with the position which all the insuring parties agreed to assume, that no loss for which any of them was liable had occurred.

It is to the last degree unlikely, and certainly will not be presumed, that any laches of the United States Insurance Company had actually released the reinsurers at the date of the execution of the agreement of 1864, and that they then voluntarily, and without consideration, reassumed so heavy a liability, — a liability for $100,000, — from which, by the neglect to give formal notice, they had been legally freed. By the agreement of 1864 it was acknowledged that all these formalities had been complied with, or waived; the agreement was made for a common defence, and the United States Insurance Company was appointed the agent of all the reinsurers, to employ counsel to act for all in what was recognized as the common cause. This trust, if it be called so, was assumed, and was faithfully discharged; but this did not constitute the United States Insurance Company the trustee of the reinsuring companies, in the sense in which the word is used by a chancellor when deal-ing with the rights and duties created by trusts, express or implied, of real or personal estates, and it imposed upon the United States Insurance Company no obligation of re-maining pecuniarily interested in the result until the close of the litigation. The United States Insurance Company, in this matter, assumed no trust, in the sense of an obliga-tion arising out of confidence reposed, to apply property faithfully and according to the confidence. Perry on Tr., sec. 1. What was the subject-matter of this alleged trust? The policies of insurance? They were property, to be

sure, but they were owned by the United States Insurance Company exclusively. The claim of Henning & Woodruff? That was a claim against the United States Insurance Company alone. The defence of that claim? The United States Insurance Company had an undoubted right to make it without the consent of the reinsurers. If the United States was not the agent of the reinsurers, it was acting for itself alone. There was no trust. There was a mere agency; yet the case was erroneously tried on the theory of a trust, as if the United States Insurance Company, in making settlement of its past losses, was dealing with trust property for its own advantage. In making the agreement of 1864, the United States gave no promise that it would remain interested in the result of the suit, and it was free to relieve itself of pecuniary responsibility, either by reinsurance of the whole risk or otherwise. If the United States was employed to engage counsel and actively defend for all, simply on the ground of its pecuniary interest in the event, it should have been made to promise that it would retain that interest to the end of the litigation; but there was no such agreement.

We see no fraud upon the rights of defendant, or the other reinsurers, in the contract of 1872. The United States and Marine Insurance Companies made a compromise after a long fight, when both sides were tired, and when a decided advantage had been gained by the adversary. They advised the reinsurers that they were about to do so; and all the reinsurers might have done the same, but they preferred to take the chances. They have taken the chances, and the event proves the wisdom of the opposite course. The United States was still bound to make an honest defence. It seems to have done so. The same counsel were still engaged. The entire burden of the defence, from the nature of things, was on the attorneys. Every fact for the defence must have been known to them for years; and every thing in the way of preparation for trial must have been com-

pleted before the compromise.  It is impossible to see how
the defence could be "sold" unless the attorneys of defend-
ant were parties to the fraud.  It does not appear that there
was any concealment of the intention to settle with the in-
sured.  The precise terms of the settlement did not concern
any one but the immediate parties to it; and reasons may
be suggested, more or less plausible, why it was for the in-
terest of those reinsurers who did not compromise that the
fact of a settlement having been consummated should not
be known.  As to what is said about concealing it from the
United States Circuit Court, it does not appear why it must
be communicated to the court.  Four-sixths of the insur-
ance were still in controversy, and to be determined by the
judgment in that case.  Had the existence of the compro-
mise agreement been brought to the attention of the trial
court, it would not necessarily have led to the dismissal of
the suit.  There would have been the same *lis pendens*, in-
volving the very same questions, the determination of which
would decide and conclude the property rights of the plain-
tiffs and of the privies of the defendant, and of the defend-
ant in that action.  There was no agreement that judgment
should go without a serious contest; nothing of the kind
appears to have been contemplated.  It is true that plain-
tiffs had agreed that the judgment should be satisfied of
record, on the transfer to them, in lieu of cash, of certain
choses in action against the reinsurers, held by the defend-
ant to the record.  But this transfer was not to be made
until the judgment was obtained.  The suit did not become
a sham suit on this account.  If the reinsurers had had
funds of the defendant in their hands, subject to check, it
would have been no ground for turning plaintiffs out of
court that they had agreed to take from defendant, in pay-
ment of any judgment that should be obtained, its check
upon the reinsurers, and we do not see what objection can
be urged to their agreeing in like manner to take an assign-
ment of these policies upon the goods destroyed.  The fact

that a recovery upon these policies must depend upon a recovery on the one then and there in suit, does not change the character of the transaction, because, if those policies were worthless, the United States was not to make it up. The reinsurers were, in effect, represented in the suit on trial by attorneys employed by their agent to defend their interests, and paid by their money, — attorneys whom they might have replaced by their counsel, had they chosen to appear in court, assert their interest in the suit, and call for the compromise agreement, of the existence and exact terms of which they knew long before the day of trial. But they saw fit not to communicate this information to the court, and preferred not to show their relation of the subject-matter of the controversy by demanding the production of the agreement for a compromise. It is said that they never ratified the compromise by an active assent, after the first expression of dissatisfaction. There was nothing for them to ratify. Not the sale of the claims against the reinsurers by the United States, for it had a right to sell its own property; not the settlement with the United States and Marine, for they had a right to settle. Ratification occurs where one had no agency at the time he acted. To revoke an agency, something positive must be done; and in the absence of express revocation, the United States properly and naturally supposed it was still empowered and expected to see to it, as it did, that the defence was vigorously carried on. The right of Henning & Woodruff to prosecute their claim was altogether independent of the agreement of 1872. The judgment was not obtained in pursuance of that agreement, though one of the instructions for defendant erroneously assumes that it was.

It is urged that the contract of July 24, 1872, provides that there shall be no appeal. We do not think the language is fairly susceptible of such a construction. The judgment, as appears from the evidence, was kept open by the United States for a reasonable time; and it is shown.

that defendant, the American Central, was asked to furnish bond for that purpose, and declined to do so ; for that reason no appeal was taken, and the judgment, after this refusal, was entered satisfied.

The judgment in this case does not appear to be excessive ; nor is the rule as to the measure of damages, declared in the instruction on that subject, incorrect.

In *Eagle Insurance Company* v. *Lafayette Insurance Company*, 9 Ind. 443, it is decided that reinsurance is a contract of indemnity, binding the reinsurer to pay to the reassured the whole loss sustained in respect to the subject insured, to the extent of the reinsurance ; but it is not necessary for the reassured to pay the loss to the first assured before proceeding against the reinsurer ; nor is the liability of the latter affected by the insolvency of the reassured, or his liability to fulfil his own contract with the first assured.

"The reinsured," says Judge Story, in *New York State Marine Insurance Company* v. *Protection Insurance Company*, 1 Story, 458, "on the happening of a loss, may pay his insured at once, at the peril of having to prove his liability in an action against his reassurer ; or he may await a suit against himself, and give notice of it to the reassurer. In that event, the reassurer should immediately pay the loss and avoid the litigation ; or, if he suffered the suit to proceed against the reassured, he would be subject to all the expenses of it, provided the latter was liable for the claim."

The insurer is to be protected by the reinsurer to the extent of his loss ; but when the loss is incurred, the reinsurer, by the precise terms of his contract, is to pay the amount to the insurer within sixty days after the same is ascertained and proved. The reassurer has nothing to do with the payment by the insurer. *Hone* v. *Mutual Ins. Co.*, 1 Sandf. 153.

That the United States Insurance Company, instead of paying the whole judgment to the representatives of Hen-

ning & Pearce, the plaintiffs in the suit, turned over to them, in part satisfaction, the policies of the reassuring companies, for collection, does not make those securities worthless. That the defendants were liable, also, for their share of costs and expenses is settled in *Strong* v. *Phœnix Insurance Company*, 62 Mo. 289.

The only defence which was, or, so far as appears, could be, interposed on the trial below, was the agreement of 1872. Defendant, by an instruction, conceded that this instrument was no defence, if defendant assented to its terms. The evidence was that, after full knowledge of this agreement, the defendants took no steps whatever to prevent their interests from being submitted to the chances of a trial, under the auspices of the United States Insurance Company, precisely as if the agreement had never been made. They were satisfied, apparently, that the agreement, after all, would make no difference in the vigor of the defence. In this sense they may be said to have assented. So the jury found, and there was evidence from which they might find so. There is nothing here of which the defendant can complain.

But the jury should have been told that the contract of 1872 did not, in its terms or by its legal import, disable the United States Insurance Company from defending in good faith the suit of Henning & Pearce against the United States Insurance Company, but should be considered by the jury as one of the circumstances of the case ; that if the judgment was obtained by fraud and collusion, then the record of the judgment was no evidence of plaintiffs' claim ; that fraud or collusion cannot be presumed, but must be proved ; and that the burden to show fraud is on the defendant ; and that, if the jury believe from the evidence that the United States Insurance Company, and the attorneys employed by it, did in good faith use all the honest means in their power to defeat the action, and that defendant had notice of suit, the judgment was conclusive against

defendant, and the jury should find for plaintiffs in this action.

Plaintiffs should have been allowed to introduce the testimony of the counsel who tried the case, to show the character of the defence.

As we see no material error in the record which was to the prejudice of appellant, the judgment of the Circuit Court must be affirmed. Judge LEWIS concurs; Judge HAYDEN, of counsel below, did not sit.