GOODRICH, Appellant, v̇. KANSAS CITY, CLINTON and
SPRINGFIELD RAILWAY COMPANY.

Division One, November 14, 1899.

1. **Negligence:** FENCE ALONG RAILROAD. A railroad company can not
be held guilty of negligence in permitting the one plank between
the wires of a barbed wire fence along its right of way to be off for
fifteen hours before the accident, thereby leaving a three foot space
between the wires, through which a horse crawled and got on the
track and wrecked the train, resulting in the death of the plaintiff's
husband.

2. ———: ———: CHARACTER OF DEFECT. One of the conditions nec-
essary to create a liability of the railroad was that the defect in
the fence must have been of such a character as to cause an ordi-
narily prudent person to apprehend danger and difficulty from its
existence; and the company can not be charged with negligence in
not apprehending that a horse would get through between two wires
of a fence, three feet apart, where a plank had been off for fifteen
hours before the accident, of which fact it had no actual knowledge,
since it is not usual or customary for a horse to get through such a
space in a barbed wire fence otherwise intact.

3. **Practice:** RE-OPENING CASE: DISCRETION OF COURT. After the court
had sustained a demurrer to the case, plaintiff asked that the case
be re-opened to enable her to prove that there had been no inspec-
tion of the fence three days prior to the accident. The witness by
whom this fact was to be shown was present in court, in response to
plaintiff's subpoena, at the time the demurrer was sustained and
the discussion thereon was had. *Held,* that the court did not abuse
its discretion in refusing to re-open the case.

*Appeal from Henry Circuit Court.*—HON. JAMES H. LAY,
Judge.

AFFIRMED.

M. T. JANUARY for appellant.

(1) A railroad company owes the same duty to its em-
ployees to furnish an unobstructed and safe track as to furnish

safe appliances.    An injury resulting to an employee from a failure of duty in this regard on the part of the company gives a cause of action.    Henry v. Railroad, 109 Mo. 487; O'Mellia v. Railroad, 115 Mo. 205; Dickson v. Railroad, 124 Mo. 140. (2)    Where the tracks of one company are rightfully used by the employees of another company, the same duty is owed to employees of both companies by the company whose tracks are used.    Roddy v. Railroad, 104 Mo. 234; 2 Wood's Railway Law, p. 1333.    (3)    The law is firmly settled in this State that the statutory duty to fence the right of way of a railroad is for the protection of human life, as well as for the protection of stock, and a neglect in erecting or maintaining such fences will render the company liable to an employee who is injured as a result of such neglect.    Dickson v. Railroad 124 Mo. 140; Briggs v. Railroad, 111 Mo. 173; Trice v. Railroad, 49 Mo. 438.    And the holding is the same in other jurisdictions.    Railroad v. Reesman, 60 Fed. Rep. 370; Donnegan v. Erhardt, 119 N. Y. 468; Railroad v. Humes, 115 U. S. 522; Quackenbush v. Railroad, 62 Wis. 411.    (4) Negligence is always a question for the jury, unless the facts are such that all reasonable men must draw the same inference from them, and the court can not direct a verdict where reasonable minds might fairly differ on the question of negligence.    Eichorn v. Railroad, 130 Mo. 575; Railroad v. Ives, 144 U. S. 408; O'Mellia v. Railroad, 115 Mo. 205.    (5) That the fence inclosing a railroad right of way was down one day is sufficient evidence of negligence to take the case to the jury, provided the defective fence was near a section house or station and could have been easily repaired, as in this case.    Foster v. Railroad, 44 Mo. App. 11.    (6)    The defendant knew that a plank exposed for ten years to wind and weather would decay and a failure to prove inspection was evidence of negligence. 2 Wood's Railway Law, sec. 374.    (7) The trial court abused its discretion in not permitting plaintiff, after closing her case, to put defendant's section foreman, who was present in court,

on the stand, for the purpose of showing that it was his duty to inspect the track and fences and that no inspection had been. made since Saturday preceding the accident.

WALLACE PRATT and I. P. DANA for respondent.

(1) The burden rested on plaintiff throughout the trial of this case to prove every material allegation of the petition and to prove the allegations as pleaded. Current v. Railroad, 86 Mo. 62; Harty v. Railroad, 45 Mo. 368; McDermott v. Railroad, 87 Mo. 285; Roddy v. Railroad, 104 Mo. 244. (2) The presumption in this court is that the action of the trial court was correct and without error; the general ruling is that the appellate court assumes everything in favor of the acts and rulings of the trial court. Porth v. Gilbert, 85 Mo. 125; Smith v. Johnson, 107 Mo. 494; State v. Cunningham, 100 Mo. 382; State v. Harkins, 100 Mo. 666; State v. Flynn, 124 Mo.480. And that he who complains of error on the part of the trial court must show it. Goode v. Crow, 51 Mo. 215, State v. Burns, 85 Mo. 47; Flynn v. Neosho, 114 Mo. 567. Our contention is that appellant has failed to overcome the presumption which exists here in favor of the correctness of the action of the trial court, and has not shown that it committed error in any of its rulings. (3) Plaintiff failed to show that any breach of defendant's duty to her husband was the cause of deceased's injuries. Or, to put it differently, conceding for the purposes of argument that deceased was an employee of the defendant, that defendant owned and operated at the time the railroad on which the train was running which was derailed, and that it was derailed in consequence of a break in one of defendant's right of way fences, there was still a failure to prove the further essential thing, namely, that the break in the fence was due to the negligence of defendant.

MARSHALL, J.—The plaintiff sues the defendant for five thousand dollars damages under sections 4426 and 4427,

Goodrich v. K. C., C. & S. R'y Co.

R. S. 1889, for the death of her husband Ralph Goodrich, who was killed near Hartwell, in Henry county, about one o'clock on the morning of July 9th, 1895, in consequence of the engine, on which he was the fireman, running over a horse that had strayed onto the track, and being derailed and wrecked. The negligence charged against the defendant is that it failed to erect and maintain lawful fences on the sides of its tracks, and that by reason thereof the horse strayed onto the track, causing the accident.

This is the second suit for the same grievance the plaintiff has brought. On the 17th of October, 1895, and within six months after the death, the plaintiff instituted suit against defendant for the recovery of damages resulting from the accident. That case resulted in a nonsuit at the May term of the Henry county circuit court. Afterwards on the 26th of May, 1896, more than six months after the death, but within a year after the nonsuit of the prior case, this action was begun. The petition is in two counts, which are alike except that the first count alleges that her husband was an employee of the defendant, the Kansas City, Clinton and Springfield Railway Company, and the second count alleges that her husband was an employee of the Kansas City, Fort Scott and Memphis Railway Company, and that at the time of the accident the latter company had a traffic arrangement with the former company, by which the latter company ran its cars over the tracks of the former company, and was so doing at the time of the accident.

The answer is a general denial, a plea of assumption of risk, and of contributory negligence on the part of the deceased or his fellow servants.

At the trial it appeared from the testimony introduced by the plaintiff that the freight train, upon the engine of which the deceased was fireman, left Springfield upon the night of July 8th, 1895, and when it reached a point about a mile

northwest of Hartwell at about one o'clock a. m. on July 9th, 1895, a horse suddenly jumped on the track about an hundred feet ahead of the engine and ran along the track ahead of the engine until it reached a railroad bridge, in which it became entangled and was run over by the train, the horse was killed, and the engine and several cars were derailed.   The deceased. jumped from the engine and received injuries, from which he died some days later.   On the west side of the track and just south of the bridge was a pasture of James Ramsey, containing about two acres, in which at night, and when not at work, he kept five of his horses.   They were gentle, well-broke horses, and had been so kept in that pasture for a long time prior to the accident.   Along the west side of the right of way of the railroad, and between it and Ramsey's pasture, there was a fence composed of four or five barbed wires attached to posts eight feet apart.   Between the top wire and that next below it there was a six-inch plank, sixteen feet long, nailed to the posts.   Ramsey had his horses in the pasture on Sunday and Sunday night, and although the entrance to the pasture was only about two hundred feet from the railroad fence, he did not observe anything wrong with the fence when he took his horses out of the pasture on Monday morning, nor indeed when he turned them into the pasture on Monday night.   Edward Thompson, who lived with Ramsey, testified, however, that at about ten o'clock on Monday morning, July 8th, 1895, he went from the pasture onto and across the railroad, and in doing so climbed between the top wire and the one next below it, and that at that time the plank was "split and hanging to one end of the post," and that the space between the two wires was two or three feet.   Thompson said nothing to any one about the plank being in this condition.   McReynolds, who owned the land on which Ramsey and Thompson lived, described the fence to be built with five wires below the plank extending about two feet in height above the ground, then a space of twelve or fourteen inches, then the six-inch plank and

then about fourteen inches above the plank another wire on top, thus making a fence about five feet high, and the space between the two uppermost wires of about thirty-four inches, in the center of which the plank was intended to be. Ramsey turned his horses into the pasture on Monday night, and when the accident occurred early Tuesday morning he went to the place and found that it was one of his horses that had gotten on the track, been killed and caused the accident. The next morning some horse hair was found on the top and next to the top wires of the fence, which corresponded in color with the hair of the dead horse. There was testimony showing that the officers of the Kansas City, Clinton and Springfield Railway Company and of the Kansas City, Fort Scott and Memphis Railway Company, were substantially the same; that the train was sent out on the order of H. S. Mitchell, who was division superintendent of both roads; that the trains of each road ran over the tracks of both roads, and that the employees were paid by the road over which they ran, the deceased during July, 1895, being paid partly by the one road and partly by the other in the proportion of the number of miles he ran over each road.

At the close of plaintiff's case the defendant demurred to the evidence and the court sustained the demurrer. Thereupon the plaintiff asked the court to open the case and allow her to put defendant's section foreman on the stand, he having been subpoenaed by the plaintiff, and offered to prove by him that it was his duty to inspect and keep in repair the fences, and that the last inspection of this fence was on the Saturday preceding the Tuesday on which the accident occurred. The court denied the application, and the jury, by direction of the court, returned a verdict for defendant. After proper steps the plaintiff appealed to this court, and here assigns as error the action of the court in directing a verdict for defendant and in refusing to open the case as aforesaid.

## I.

There was sufficient evidence to establish, *prima facie*, the allegation of the petition that, at the time of his death, the deceased was employed, as a fireman, by the defendant company.

## II.

There is no substantial disagreement between counsel as to the general principles of law underlying the main issue in the case. It is conceded that it is the duty of the master to furnish the servant safe and suitable appliances for the work; to furnish a safe track for the cars to run over; to erect and maintain a fence on each side of its right of way; to inspect and keep in repair its track, machinery, appliances and fences, and that the master is liable for injuries received by the servant which were caused by a non-compliance by the master with these duties of the master, if the master actually knew of the defects or by the exercise of ordinary care could have ascertained such defects.

In the application of these principles to the facts disclosed by the evidence in the case at bar, counsel are disagreed. The plaintiff contends that the fact that the plank was shown to have been off of the fence as early as ten o'clock on Monday morning, July 8th; that there was thereby left a space of from twenty-eight to thirty-six inches between the top and next to the top wire of the fence; that the accident did not occur until about one o'clock on the morning of Tuesday, July 9th, or fifteen hours after it was shown the plank was off of the fence; that the section house was at Hartwell, only a mile distant from the place of the accident, and that an inspection at any time during Monday would have disclosed the fact that the plank was off of the fence, and that it could have been easily replaced in five minutes; that the accident was

caused by running over a horse that had been placed in the pasture on Monday evening, and which had gotten out of the pasture and onto the track during the night; that the horse hair, corresponding in color to that of the dead horse, found the next morning on the wires at the place where the plank was off, makes a *prima facie* case against defendant, first, because it shows the defendant, by a proper inspection could have ascertained the defective condition of the fence in ample time to have repaired the fence before the accident, and, second, because "negligence is always a question for the jury, unless the facts are such that all reasonable men must draw the same inference from them, and the court can not direct a verdict where reasonable minds might differ on the question of negligence."

On the contrary defendant contends that the fence was not down, but only one plank was off of it; that it had not been in this condition more than fifteen hours before the accident; that otherwise the fence was in compliance with the law; that in the nature and uses and liability to get out of order, there is a great difference between a track and engine and other appliances for running a train on the one hand and a fence on the other hand—that as to the first a more rigid and frequent inspection is necessary than is or ought to be required of the other; that no reasonable man would require a daily inspection of all the fences on both sides of the right of way of the railroad, for human experience proves that such watchfulness is not at all necessary, and that the cases are not so frequent where accidents have occurred on railroads from stock getting on the track, as from the track getting out of order in consequence of the strain on it caused by heavy trains passing over it at high rate of speed, and hence a daily inspection of the fences is not required of a railroad company and an accident occurring from one plank having been off a fence for fifteen hours before the accident, does not make out a case where reasonable men might fairly differ on the ques-

tion of negligence, and therefore the circuit court did right in directing a verdict for the defendant.

The question of law is thus fairly and squarely presented.

Counsel for plaintiff relies, chiefly, upon Foster v. Railroad, 44 Mo. App. 11, which was an action under section 809, R. S. 1879, to recover double damages for the killing of a cow, and in which it appeared that one or more whole panels of the cross fence which connected the lateral fences with the cattle-guard on the track were down, and had been for *one day* before the accident. ROMBAUER, J., delivering the opinion of that court, quoted from the decision of this court in Townsley v. Railroad, 89 Mo. 31, in which HENRY, C. J., said: "It is not the law that if a storm prostrates a railroad fence, or malicious persons tear it down, or by accident of any kind it is demolished, the company is liable under the double-damage act for injury to animals straying upon the road at that point, unless it had notice of the condition of the fence, or it had remained so long out of repair, that want of knowledge could be imputed to the negligence of the company," and then added, "If, therefore, in the case at bar, no more had been shown than that this panel of fence was out of repair, where the cow got through it and upon the track, the defendant's demurrer to the evidence would have been well taken. But in view of the fact, that this part of the fence was down for at least one day prior to that time, that the damage to the fence was of a character which could have been easily repaired, and that the place seems to have been in close proximity to a station, we are not prepared to say that the court erred in submitting the question to the consideration of the jury by an instruction given on that subject of its own motion."

Counsel invokes the doctrine here announced, insists that the Foster case and the case at bar are parallel and urges that "the rule should be at least as strict in the case of a man killed as in the case of a cow."

If the case at bar was an exact parallel to the Foster case, we should probably reach the same conclusion that was arrived at by the court of appeals. But there is this marked difference between the two cases: in the Foster case one or more whole panels of fence were down, whereas in this case the barbed wire fence was intact, except that the plank between the top wire and the next lower wire was down. An animal can naturally be supposed to go through an opening in a fence caused by one or more whole panels being entirely down, but it is not usual or customary for a horse to get through between the wires of a barbed wire fence, where the wires are from twenty to thirty-six inches apart. In fact, it seems on the face of it, that no man could drive a horse through such a place in a barbed wire fence. We are not advised as to the size of this horse, and hence can not tell whether he could have gone through such a fence, but such conduct of a horse is so uncommon that we have found no reported precedent for it. It is, of course, possible that a small horse could get through a three-foot space between the wires of a barbed wire fence, and the hair found on the fence the morning after the accident seems to indicate that this particular horse got through this particular place on that night, but this does not fill all the conditions necessary to create a liability of the defendant. The defect must be of such a character as to cause an ordinarily prudent person to apprehend difficulty and danger from its existence, and the defendant must have had actual knowledge of it for a time long enough to enable it, reasonably, to make repairs, or the defect must have existed for such a length of time, that by the exercise of reasonable diligence the defendant could have ascertained it and repaired it. [Clardy v. Railroad, 73 Mo. l. c. 578.]

The decisions in this State have fixed no specified time within which known defects must be repaired, and no time within which the knowledge of defendant will be imputed. The time is always stated to be a "reasonable time." What

is a reasonable time, of course, depends upon the character of the defect and the dangers a reasonably prudent man would expect from allowing the defect to go unrepaired. What would be a reasonable time within which to ascertain and repair a defect in a railroad track or engine or car, would, of course, be a much shorter time, than would be allowed to ascertain and repair a defect of a plank being off a barbed wire fence, which left an opening of three feet between the wires, for the track and engine and car are used every day and perhaps many times a day, but such a defect in such a fence could not ordinarily be expected to result in a horse getting through the fence and wrecking a train—at any rate, not within fifteen hours after the plank became detached from the fence.

In Clardy v. Railroad, 73 Mo. 576, the judgment against the defendant was reversed because it did not appear for how long a time before the accident the fence was down or defective. In Fitterling v. Railroad, 79 Mo. l. c. 508, the judgment against the company was reversed and this court said the demurrer to the evidence should have been sustained because it did not appear that the defendant knew of the defect in the fence and that the defect did not exist on the day before the night when the accident occurred.

In Chubbuck v. Railroad, 77 Mo. 591, the judgment against the defendant was reversed and this court said the demurrer to the evidence should have been sustained because the case was predicated upon a defective cattle-guard, and it was not shown how long the defect had existed, notwithstanding "the fence had been down all summer."

In Maberry v. Railroad, 83 Mo. 667, it appeared that a tree had fallen across the fence breaking it down; that while the fallen tree remained on the fence it would turn stock, but the tree burned up, and left an open space for the passage of stock, which was the condition for one or two weeks before the accident, and this was held sufficient to warrant a recovery against the defendant.

In Wilson v. Railroad, 87 Mo. 431, the defect in the fence existed for two or three months before the accident, and it was held sufficient to support a recovery.

In King v. Railroad, 90 Mo. 520, it appeared that the top plank of the fence had been off at two different places for some time, but that at a "new break, which showed it had just been made, there was found to be horse hair upon the splinters of the broken plank and tracks all along, between this break and the railroad;" and also that the fence had been inspected the day before the accident and there was no break in the fence at that time where this fresh break was found. The judgment for plaintiff was reversed.

In Laney v. Railroad, 83 Mo. l. c. 471, it appeared that the latch on the gate in the fence was repaired a week before the accident and it was not noticed to be out of repair for a week after the accident. The circuit court sustained a demurrer to the evidence and that judgment was affirmed by this court.

In Vinyard v. Railroad, 80 Mo. 92, the fact appeared that two of the upper planks of the fence had been sawed off at one end, about two months before the accident, but had been repaired "by nailing a plank perpendicular with and to the post and nailing the ends of the sawed planks to it," but that one or two days before the accident this panel of the fence was down. A judgment for the defendant was sustained.

Thus we see that where the defect had existed only one or two days the defendant was held not liable; that where it existed a week or more the defendant was held liable, and where the defect was repaired a week before the accident and the defect was not noticed for a week after the accident the action of the circuit court in sustaining a demurrer to the evidence was affirmed by this court.

It can not, therefore, be said that this court has ever held that a defect in a fence that has existed for only one day will

support a finding against the defendant. Under this condition of the precedents in this State, the trial court can not be held to have erred in holding that the defendant was not guilty of negligence in permitting *one* plank to be off between the wires of a barbed wire fence for fifteen hours before the accident, thereby leaving a three foot space between the wires, through which a horse crawled and got onto the track and wrecked the train; nor that the court erred in refusing to reopen the case to enable the plaintiff to prove that the fence had not been inspected since the Saturday before the Tuesday morning when the accident occurred. The witness by whom it was expected to prove this fact was present in court, under subpoena issued for plaintiff, at the time the demurrer to the evidence was made, and plaintiff waited until after the discussion and final disposition of the demurrer before making the application for leave to prove this fact, which could have been proved by this same witness before plaintiff rested her case. The circuit court did not abuse its discretion in this respect, and therefore we should not interfere. [Mayor of Liberty v. Burns, 114 Mo. 426.]

It follows that the judgment of the circuit court must be affirmed. It is so ordered.

All concur.