MEIFERT, Respondent, v. NEW UNION SAND
COMPANY, Appellant.

St. Louis Court of Appeals, April 16, 1907.

DAMAGES: Manufacturing Establishments: Guarding · Dangerous
Machinery. Under section 6433, Revised Statutes 1899, manu-
facturing establishments are obliged to guard belting, shafting,
gearing, etc., only when they are so placed as to be dangerous
to employees while engaged in their ordinary duties. Where
an engineer in oiling the machinery with which he was employ-
ed to work was obliged to stand in an unusual position and the
machinery, being at rest, slightly started in a manner which
could not have been expected, so that he was thrown between
two cog wheels and injured, his employer was not negligent in
failing to guard the cogwheels; no ordinary sagacity would ap-
prehend danger under the circumstances.

Appeal from St. Louis City Circuit Court.—*Hon. Walter
B. Douglas,* Judge.

REVERSED AND REMANDED.

*Seddon & Holland* and *Block & Sullivan* for appel-
lant.

(1)   No violation of section 6433, Revised Statutes
1899, was shown and the court erred in submitting such
to the jury.   Strode v. Box Co., 124 Mo. App. 511; Muir
v. Milligan, 19 Sc. Sess. Cas. 18; Robb v. Bullock, Id.
974; Hindle v. Birtwistle (1897), 1 Q. B. 193; Cobb v.
Welcher, 75 Hun (N. Y.) 283; Glassheim v. Economical
Pr. Co., 34 N. Y. Supp. 69; Glenn Falls Co. v. Ins. Co.,
162 N. Y. 404; Byrne v. Carpet Co., 46 App. Div. (N. Y.)
480; Dillon v. Coal Tar Co., 181 N. Y. 217; Scialo v.
Steffens, 105 App. Div. (N. Y.) 593; Robertson v. Ford,
164 Ind. 538; Powalske v. Brick Co., 110 Wis. 460;
Morgan v. Hinge Co., 97 S. W. 643; Latapie v. Askew
Saddlery Co., 193 Mo. 1.   (2)   It is not negligence to
fail to provide against such contingencies as ordinary

human foresight will not anticipate as likely to occur. Craney v. Railroad, 157 Mo. 683; Brewing Assn. v. Talbot, 141 Mo. 684; Lohring v. Construction Co., 118 Mo. App. 179.

*Alfred P. Hebard* and *Everett W. Pattison* for respondent.·

(1) The question whether the foresight of a prudent man exercising the degree of care imposed by the statute could have anticipated the possibility of any injury from the gearing in this case to· an employee while engaged in the performance of his ordinary duties, was for the jury, and as such was properly submitted by the trial court to the jury. Blanton v. Dold, 109 Mo. 64; Sackewitz v. Biscuit Co., 78 Mo. App. 144; Lee v. Railroad, 112 Mo. App. 372; Dakan v. Mercantile Co., 197 Mo. 238; Durant v. Mining Co., 97 Mo. 62; Bair v. Heibel, 103 Mo. App. 621; Stafford v. Adams, 113 Mo. App. 717; Braun v. Railroad, 53 Iowa 595, 36 Am. Rep. 243; Hoepper v. Hotel Co., 142 Mo. 378; Lawrence v. Ice Co., 119 Mo. App. 331; St. Clair v. Railroad, 122 Mo. App. 519; McGinnis v. Printing Co., 99 S. W. 4. (2) The statute imposes a higher degree of care than that imposed by the common law. Colliott v. Mfg. Co., 71 Mo. App. 163; Lore v. Mfg. Co., 160 Mo. 608.

GOODE, J.—This respondent's foot was crushed by being caught between a large and small cogwheel which geared with each other. The accident happened in appellant's establishment. This was a sand hoisting apparatus on the bank of the Mississippi river in St. Louis. The apparatus consists of ponderous machinery operated by steam, and placed in two buildings. Such parts of the machinery as concern the case will be described, though perhaps no clear notion of how the different parts were placed with reference to each other can be imparted. We have been assisted in our study of the

case by a photograph of the interior of the room in which the accident happened, from which an understanding of the mode in which it happened has been derived. The hoisting machinery rested on a trestle about seven feet square and a few feet above the floor. Two large drums wrapped with steel wire composed part of the apparatus. They were apparently two and one-half to three feet in diameter. Over these drums ran steel cables extending outside the building. One of them was used to shift the position of the sand barges on the river and the other to hoist the sand from the barges. Motion was communicated to the drums, or to one of them, by the cogwheels in which respondent caught his foot. These wheels were placed to the rear and below the drum they were to turn and rotated on steel shafts. The engine which operated the plant was placed immediately outside the trestle the machinery rested on and in the same room. When the machinery was to be oiled the engine was shut down and the motion of the machinery stopped. When oiling the drum, which was situate above the cogwheels, it was necessary for a workman to stand on the shaft on which the smaller cogwheel revolved when in motion. With the workman in that position the steel drum was on a level with his chest and its upper portion reached a few inches below his chin. There is an oil hole in about the center of the drum. The steel cable running on the drum usually covered the oil hole, and in order to reach the hole with the nose of the oil can, it was necessary to shift the cable. While respondent was in the act of shifting the cable to afford him access to said oil hole, the engine, for some unknown reason, gave a single stroke, causing the shaft on which he was standing to revolve. The movement unsteadied respondent, and in attempting to regain his balance on the shaft, his foot was caught between the cogwheels by the side of which he was standing, crushing it. The motion of the machinery was but for an instant and it does not appear whether

the shaft made a complete revolution or not. Respondent was one of the engineers of the plant and was the only person who worked in the room. The fireman worked at the furnace in the adjacent room and it was his duty to go into the machinery room and oil the machinery at times when it was idle or stopped for the purpose. On the occasion in question respondent stopped the engine by closing the throttle. The way respondent happened to take part in oiling the machinery was that when the fireman endeavored to move the cable on the drum so as to reach the oil hole, he was unable to do so and called respondent to his assistance. This was customary and, in accordance with the custom, respondent went to the fireman's assistance, took his position on the shaft, grasped the cable and the engine started. The testimony goes to show the oiling was always done while the apparatus was at rest, and until this particular occasion, the machinery had never moved during the oiling. Respondent testified further that if the throttle was closed, but not quite tight, the engine would gradually accummulate a head of steam in the steam chest and start the engine. He testified he had discovered no leaks in the valves or any other defects in the engine; that no other employee, or other person, could, or had occasion, to get on the shaft or near the cogwheels while the machinery was running. It should be stated that the cogwheels were inside the framework on which the machinery rested and, as far as is shown from the evidence, no one went about them except when the machinery was to be oiled. The negligence alleged is omitting to guard the cogwheels, it being contended that this omission constituted a violation of the statute requiring belting, shafting, gearing, and drums in manufacturing, mechanical and other establishments, when so placed as to be dangerous to persons employed therein, while engaged in their ordinary duties, to be safely guarded if possible. [R. S. 1899, sec. 6433.] It is not denied there was evi-

dence to show the wheels could have been guarded without interfering with the hoisting, or that plaintiff, when injured, was performing an ordinary duty. The only question for decision is whether or not the wheels were so placed as to be dangerous to employees while engaged in their ordinary duties. That they were not is self-evident, we think. No one was supposed to go near them except when they were motionless and harmless, and then only the engineer and fireman, to oil the drum occasionally. How the engine happened to start unexpectedly is not explained; for the engineer swore he had worked with it four years without noticing any leak of steam into the steam chest, and that he had closed the throttle tight. Likely he was mistaken about having done this, and, on the contrary, had left a slight opening through which steam seeped into the chest. But such an incident never had happened before, nor had the machinery ever started while an employee was standing on the shaft by the cogwheels to oil the drum. That the engine should start and rotate the shaft was scarcely imaginable. Respondent's counsel say appellant's managers were bound to anticipate a possible leak of steam into the chest or the engineer leaving the throttle partly open, or some other person opening it while the oiling was being done; was bound to anticipate further, that in consequence of one of those occurrences, some workman standing on the shaft would get caught by the cogwheels. Foresight to that extent would be divination rather than anticipation. If the shaft happened to rotate unexpectedly, it would be the merest chance that a man standing on the shaft would be caught in the cogs, and no ordinary sagacity would apprehend danger from the cogwheels. The law does not require these unthinkable accidents to be guarded against because, though they happen now and then, in order to guard against them, they would have to be foreseen. In Strode v. Columbia Box Co., 124 Mo. App. 511, we examined all

the accessible decisions construing statutes like the one in question, for the purpose of ascertaining what machinery the statute requires to be guarded. Instead of going over the subject again we will refer the reader to that opinion. Even when the law contains no express qualification of the duty to guard, the courts have construed it to require guarding only when danger to employees from the appliance is within reasonable anticipation. The language of our statute excepts from the force of it, wheels and other appliances so placed as not to be dangerous to employees while engaged in their ordinary duties. Of course, this, in most instances, would raise a question for the jury; but when the evidence has no tendency to prove a man of ordinary care would have foreseen the danger, it is a question of law. We can think of no case in which danger would be less likely to occur to the mind in advance than the instance before us.

As the plaintiff pleads negligence at common law as well as under the statute the judgment is reversed and the cause remanded. All concur.