STRODE, Public Administrator, Curator of FIND-LAY, Respondent, v. COLUMBIA BOX COM-PANY, Appellant.

St. Louis Court of Appeals, April 16, 1907.

1. **FACTORIES: Guarding Dangerous Machinery.** The provisions of section 6433, Revised Statutes 1899, do not require dangerous machinery to be guarded simply because it is possible to guard it, but it is required to be guarded only "when so placed as to be dangerous to persons employed therein or thereabout when engaged in their ordinary duties."

2. ———: ———: **Danger of Contact With Machinery.** The statute is intended to afford protection not only against accidents which may occur from contact with the machinery while in motion, but it is intended to protect the employees from injury due to breaking, slipping or other mishaps to machinery which would be likely to injure employees without actual contact.

3. ———: ———: **Reasonable Ground to Anticipate Danger.** But an employer is not required to guard machinery unless there is reasonable ground to anticipate injury to employees either in the course of its regular movements or by an irregular movement due to its bad repair or bad handling; if an appliance is so placed that no danger to employees would be expected by a prudent man, the proprietor is not liable for an injury which might have been averted by guarding the appliance.

4. ———: ———: ———. Where an employee in a factory was injured by the breaking of a belt unconnected with the floor on which he worked, but used with the floor above and revolving about a drum at the ceiling above his head, and where there was no proof as to how frequently belts tear in two and fly off their drums or that such an occurrence ever happened before, and no testimony from experts to show it was to be apprehended, the accident was such as a prudent man would not have anticipated and the employer was not required to guard the belt and drum.

Appeal from St. Louis County Circuit Court.—*Hon. Jno. W. McElhinney,* Judge.

REVERSED AND REMANDED.

*Wise & McNulty* and *Seddon & Holland* for appellant.

The court erred in refusing to give the peremptory instruction offered by appellant at the close of all the evidence. (a) Because section 6433, requiring beltings to be guarded, has no application to a case of this kind where the injury results to an employee from the breaking of a belt. Neeman v. Smith, 50 Mo. 528; Fusz v. Spaunhorst, 67 Mo. 267; State v. Hayes, 81 Mo. 584; Potter v. Douglas County, 87 Mo. 243; Dillon v. Coal Tar Co. (N. Y.), 73 N. P. 978. (b) Because the evidence in this case showed no violation of article 17, of which

section 6433 is a part, because section 6446 provides what shall be deemed a violation, and there was no evidence that the appellant had failed to comply with said section 6446. State v. Fisher, 119 Mo. 344; State v. Withrop, 133 Mo. 500; Miller v. Wagner, 18 Mo. App. 14; Grumley v. Webb, 44 Mo. 444; Dart v. Bagley, 110 Mo. 42-54; State v. Schumann, 133 Mo. 111; Endlich on Interpretation of Statutes, sec. 216; Rozelle v. Harmon, 103 Mo. 309; State v. Reid, 125 Mo. 43; Jackson v. Railroad, 87 Mo. 422; Borck v. Bolt & Nut Works, 111 Mich. 129; Montforton v. Pressed Brick Co., 113 Mich. 39; Greenhaus v. Alter, 30 N. Y. App. Div. 585; Pauley v. Steam Gauge Co., 131 N. Y. 87; In re Fire-Escapes, 2 Pa. Dist. Rep. 623; Perry v. Bangs, 161 Mass. 35; De Genther v. New Jersey Home, 58 N. J. Law 354.

*A. R. Taylor* for respondent.

GOODE, J.—This action was begun in the name of John Findlay, a minor, by his curator, Garrard Strode, public administrator of the city of St. Louis. The relief sought was damages sustained from a personal injury to the minor in appellant's factory, an establishment for the manufacture of boxes. When the accident occurred Findlay was working on a machine on the first floor of the building. A drum or pulley about a foot in diameter rotated on an axle overhead. This drum was from a foot to a foot and one-half higher than his head and the same distance to the right of where he stood when at his ordinary work. The upper portion of the drum was between two of the joists on which the floor of the second story of the building was laid, there being no ceiling in the room. About half the diameter of the drum came below the joists and the other half was between them and close to the floor above. A heavy beam of wood ten inches

124 App—33

square ran transversely under the joists and supported them. The drum was close to this beam and hung down as far as the middle of it. Findlay's position while at work was a slight distance on the opposite side of the beam from the drum—far enough for the latter to be hidden from his sight. The drum was an iron cylinder carrying a belt thirty feet long which ran upward through an opening in the first floor and turned the machinery on the second floor. Though the belt ran on the rotating drum or pulley among the joists, it was unconnected with the machinery on the first floor. While Findlay was at work in his usual place, the belt broke and one end of it struck him, fracturing his skull. The testimony went to show the belt was manufactured by a concern of established reputation; that it was practically new, under constant inspection, and that it tore asunder across its fiber where there was nothing to indicate weakness. Negligence in regard to the condition of the belt is alleged in the petition, but no evidence was offered in support of the allegation and the court withheld it from the jury's consideration.

The only ground of recovery submitted was that the belt was not guarded as required by the statute, although it was practicable to do so and that the failure to guard it caused the injury. Against this theory, appellant contends the statutes in reference to safeguarding machinery, do not contemplate that an appliance located where no workman is in danger of contact with it while in the performance of his task, shall be screened; and as there was no chance for a workman to come in contact with the belt where it ran over the drum, a guard was not required. It is apparent that Findlay was hurt by one of the ends of the ruptured belt flying down through the aperture in the floor above and striking him. Therefore, the theory of the respondent is that a guard, or screen should have been placed under the drum to intercept the descent of the belt in case it tore in two. On the

evidence, which was contradictory, the practicability of such a screen was properly left to the jury if the question was material. But negligence on the part of the appellant cannot be found from the simple fact that it was possible to guard the drum. It must further appear that the belting was placed where it would be dangerous to employees therein or thereabout, while engaged in their ordinary duties; which means, when applied to the present case, that it was dangerous to Findlay or the other employees on the first floor of the building while at their work. The statute reads as follows:

"Belting, shafting, gearing and drums, in all manufacturing, mechanical and other establishments in this State when so placed as to be dangerous to persons employed therein or thereabout, while engaged in their ordinary duties, shall be safely and securely guarded when possible, if not possible then notice of its danger shall be conspicuously posted in such establishments." [R. S. 1899, sec. 6433.]

The statute shows on its face that not all of the mentioned appliances need be guarded and the point of law to be determined on the appeal is, what is meant by the words "When so placed as to be dangerous to persons employed therein or thereabout when engaged in their ordinary duties?" Appellant's counsel say the meaning is that no appliance of the kind specified need be guarded, unless there is danger of an employee getting in contact with the moving appliance while engaged in his ordinary duties. In other words, that the statute does not intend to protect employees against injuries arising from defective appliances or negligent management, for which the common law provides a remedy; but intend only to afford protection against such accidents as may occur from contact with the appliance while in motion, even if it is in good order and properly operated; and hence, if an appliance is so located that employees cannot come in contact with it while running, without go-

ing out of their way, the statute does not require it to be guarded. The argument is enforced by pointing to the clause of the statute which provides that when it is impossible to guard an appliance placed where it imperils employees, notice of the danger shall be conspicuously posted. This clause is said to demonstrate that the purpose of the statute is to prevent accidents occurring from employees getting into contact with moving belts, drums and shafting, as there would be no occasion for the warning if the statute intends that such appliances shall be guarded when set where employees cannot get against them. The following cases were determined on factory acts similar to ours: Dillon v. National Coal Tar Co., 181 N. Y. 215; Glens Falls Portland Cement Co. v. Insurance Co., 162 N. Y. Supp. 1068; Byrne v. Carpet Co., 61 N. Y. Supp. 741; Glassheim v. Printing Co., 34 N. Y. Supp. 69; Powalske v. Brick Co., 110 Wis. 461; Robertson v. Ford, 164 Ind. 538; McKechnie v. Bulloch, 19 Sess. Cas. (4th Series), 971 (1892); Muer v. Milligan, 19 Id. 18; Robb v. Bulloch, Id. 974. Those decisions cannot be said to accept appellant's proposition, that such statutes are not intended to protect employees from injuries due to breakage or other mishaps to machinery. What they unquestionably decide is that when a machine, which otherwise the statute would require to be guarded, is located where there is no reasonable ground to anticipate injury to an employee either from its proper and regular motion, or from some erratic movement outside its usual orbit, the master is not responsible for an injury caused by it though unguarded. The statute is remedial and its efficacy ought not to be weakened by interpretation. If belts, shafts, gears and drums are accustomed to fly from their proper positions. in consequence of breaking or slipping, and it is possible to guard them so as to prevent their movements from hurting employees, the language of the law is broad enough to require guarding. To rule otherwise would defeat, in

part, the object of the Legislature which is shown by the title of the original act to have been the promotion of the safety and health of employees. [Session Acts 1891, p. 159.] Whenever an appliance of the given kind is so placed as to endanger employees in the performance of their regular tasks, either by their coming into contact with it, or it with them, the duty to fence arises if it is possible to do so. Suppose belts are in the habit of slipping off their drums and flying about in a dangerous way, why should this risk not be minimized if possible? If a belt cannot be screened, notice of the fact would have no tendency to keep the belt from breaking or slipping off the drum; and this is the argument raised by defendant's counsel to support the theory that it is not necesssary to screen machinery save when employees may get into contact with it. But the notice might prevent a person from accepting a task which would expose him to the risk of injury from an unscreened and dangerous appliance. Hence it is not obvious that the requirement of notice aims at no purpose except to warn employees not to get against the machine. It aims to have them warned of the risk accompanying a given task in proximity to an unfenced appliance. But this requirement is, at most, only part of the duty imposed on proprietors and does not of necessity, limit the duty of guarding imposed in the preceding clause, to instances where employees may get against a dangerous appliance. It means no more than that when there is a piece of machinery which cannot be guarded, and which is liable to hurt an employee, he shall be warned. It is no corollary of this proposition that when the mode in which injury may be inflicted is by an irregular movement of an appliance it need not be fenced. We have found no case in which this question was much discussed; but in Hintle v. Birtwistle, L. R. 1 Q. B. (1897) p. 192, a decision on an English factory act not materially different from ours, the court uttered relevant remarks. In said case

the injury was due to an erratic movement of a shuttle. The opinion assumed that the statute required the shuttle race to be screened if the accident could have been anticipated. This case will be noticed again.

In our judgment, the facts before us show no liability on the part of the appellant, on the more conservative view of the law taken in the cases we have cited. Most of these cases were based on accidents caused by employees coming in contact with revolving shafts, not guarded, but located where there was no reason to think it was dangerous to employees in the course of their ordinary duties. In Dillon v. Coal Tar Co., the injured servant was a steam fitter who had been directed to take down a line of pipe near the ceiling of a room in the company's factory, and while engaged in doing the work, his clothing caught on a revolving shaft. The shaft ran about two feet below the ceiling of the room and was out of reach except on a ladder. On this state of facts it was ruled the company was under no statutory obligation to guard the shaft. The opinion cites Glens Falls Portland Cement Company v. Insurance Company, supra, in which the factory laws of the State of New York were construed by the court of last resort in that State. The statute involved reads: "All vats, pans, saws, planers, cogs, gearing, belting, shafting, set-screws and machinery of every description therein (in a factory) shall be properly guarded." An employee was hurt while oiling a shaft which revolved fifteen or eighteen feet above the floor of the room, the employee having ascended to it on a ladder. The shafting was unguarded and his sleeve caught in a set-screw. The question for decision was whether, under the statute, there should have been a guard. It will be observed that the New York statute does not contain the words found in the Missouri statute, that the specified machinery shall be guarded "when so placed as to be dangerous to employees engaged in their ordinary duties;" but the New York Court of Ap-

peals read the equivalent of those words into the statute as necessary to give it a reasonable meaning. The opinion said the Legislature could not have intended every piece of machinery in a large building should be covered or guarded, for that would be impracticable; that the intention was that those parts of the machinery which were dangerous to servants working in the immediate vicinity, should be properly guarded. In Byrne v. Carpet Company, a youthful employee had undertaken to extricate from a machine a carpet which was being damaged by creasing as it ran through the machine. To do this act was not a part of the employee's ordinary duty, and the revolving cylinder which hurt her, was out of the way of every one who did not reach over to it. The ruling was that there was no statutory obligation to guard the knives which inflicted the injury. In Glassheim v. Printing Company, supra, an employee was hurt by his clothing catching in a set-screw in a shaft nine and one-half feet above the floor of the room. He was on a scaffold at the time, kalsomining near the ceiling. It was held shafting that far above the floor need not be guarded. In Cobb v. Welcher, supra, a girl who worked in a factory had allowed her hair to fall loose. Some of it flew underneath a table on which she worked, was caught on a shaft which revolved beneath the table and her scalp torn from her head. The shaft was boxed every where except under the table, and the decision was that boxing was not required there as the accident could not have been foreseen. [Compare McGinnis v. Printing Co., 99 S. W. 11.] The Wisconsin statute is substantially like ours. The Supreme Court of Wisconsin was called on to construe it in Powalske v. Brick Co., supra. A shaft which operated the machinery in a factory, projected on the outside of the building about two feet and was there unguarded. A boy worked on the outside of the building, some three feet from the unguarded end of the shaft.

His duty was to unload a cart at that point, and in doing this work he accidentally came in contact with the shaft and was hurt. The decision was that negligence could not be predicated from failure to guard the exterior end of the shaft, because it was out of the way of employees in pursuing their duties. Those cases are very analogous in their facts to the one at bar, and would warrant us in holding, without further inquiry into the principle of the decisions, that the present appellant committed no violation of the statute in failing to have a guard put under the drum on which ran the belt which struck Findlay. But it may not be amiss to attempt a deduction of the principle which the courts relied on in giving their judgments. As we have said, this principle is not that the statute requires machinery to be guarded only to protect employees from the danger of getting against it while it is doing its regular work. The true theory of the cases is that an employer is required to fence or guard machinery only when there is reasonable ground to anticipate injury of some kind to employees from it, either in the course of its regular movement, or by an irregular movement due to its bad repair or bad handling, and then he is bound to guard it. This was the construction put on the British statute by the Court of Queen's Bench in Hindle v. Birtwistle, L. R. (1897) Q. B. 192. In that case, a weaver in a cotton factory was hurt by a shuttle flying out of the shuttle-race in one of the looms and striking him. The weaver himself caused the accident by fastening too taut a certain band which moved the shuttle; whereby the instrument was deflected from its proper course and flew against him. In disposing of the case, the court said the judge who had tried the cause below seemed to think no machinery could be considered dangerous in the sense of the statute, unless it was dangerous in itself, however, carefully worked; but that this interpretation was too narrow, and in considering the question of whether there was danger, the

contingency of carelessness on the part of the workmen in charge and the frequency with which that contingency was likely to arise, must be regarded; that machinery was dangerous if, in the ordinary course of human affairs, danger might reasonably be anticipated from the use of it without protection. "It is entirely a question of degree," says the opinion. The evidence showed similar accidents had happened in the factory, some of them serious. Therefore, the proprietor might have seen the necessity of guarding the machinery, and the statute applied. Like facts appeared in Lore v. Mfg. Co., 160 Mo. 608, 61 S. W. 678. On the authority of the cases cited, we think it may be said that if an appliance of the kind specified in the particular statute is so located that danger to employees is reasonably to be anticipated and it is left unguarded, the proprietor is responsible for an injury which would have been prevented by guarding it. On the other hand, if an appliance is so placed that no danger to employees would be expected by a prudent man, the proprietor is not liable for an accident which might have been averted by a guard. In Glens Falls, etc., Company v. Insurance Company, the opinion said that masters are not called upon to guard against every possible danger, but only against such dangers as will occur to a reasonably prudent man as liable to happen. So in Bryne v. Carpet Company, the court said: "The statute does not require every machine to be fenced in. It does not mean that all knives which might possibly be reached in a machine, must be guarded. The law requires to be guarded those parts of the machinery, which, in reasonable anticipation, may be a source of danger to the operatives. It is not within reasonable anticipation that a child at work in a different part of the factory should be attempting thus to adjust a carpet in a swiftly moving machine which was in no way connected with her work." In Cobb v. Welcher, the court said the factory act did not make the proprietor an insurer of the safety of his em-

ployees or require him to guard against extraordinary accidents which careful and prudent men could not foresee, or anticipate as liable to occur. Similar statements of the principle of the decisions will be found in the other cases. In Graney v. Railroad, 157 Mo. 683, 57 S. W. 276, our Supreme Court said no man is required to anticipate an accident which has never occurred, or held negligent if he fails to do so; and that if the rule were otherwise, it would be a reproach to the law, justice and reason. Of similar import are the decisions in Brewing Assn. v. Talbot, 141 Mo. 674, 42 S. W. 679; Goodrich v. Railroad, 152 Mo. 222, 53 S. W. 917, and this is the doctrine of all courts. It is moreover, the plain doctrine of the statute in question, and we cannot say appellant was bound to screen the belt which broke, simply because it was a belt in the factory, without expunging from the statute the clause restricting the duty to put guards around appliances to instances where they are so placed as to be dangerous to employees while engaged in their ordinary duties. This, of course, ought not to be done, if it is possible to give an effect to the clause which will consist with the other clauses.

But it may be said that when a machine is so placed as to be dangerous to employees, is a question of fact for the jury and not one of law for the court. In most instances, no doubt, this would be true, and the fact has not escaped the attention of the courts in dealing with the question of negligence under the factory statutes. [Powalske v. Brick Co., 110 Wis. 461, 467.] In any negligence case, whether the negligence be the omission of a statutory duty or some other duty, the culpability on the part of the defendant is to be found by the jury, when fair and reasonable minds might differ about what the evidence shows; otherwise, the court will take the matter out of the jury's hands. Therefore, the essential question at this point is, whether the evidence warrants the inference that the drum or belting which

hurt Findlay was so placed that danger from it to him or his co-employees on the first floor, would have been anticipated by a prudent man. We have before us the paramount fact that the belt hurt Findlay, which may be said to prove it endangered him; and no one can deny, in the face of the injury he received, that it did. But the essence of the inquiry is not whether it was dangerous, but whether a prudent man, anterior to the accident, or any accident from the belt, had reason to believe it was. As to this inquiry repeated studies of the record have convinced us there is no evidence whatever, except the bare circumstance that this particular accident occurred; and the most innocent machine may cause accidents occasionally. There is no proof as to how frequently belts tear in two and fly off their drums, to the peril of persons in their vicinity, or that such an occurrence ever happened before; nor was there any testimony from experts to show it was to be apprehended. Neither juries nor courts can take notice of what the truth is in this regard, for it is not a matter of common knowledge. On the face of the facts, it would appear to be very improbable that an employee would be hurt by a belt in such a position as the one was in that hurt Findlay. Courts have considered the point of whether the jury may find a machine was so dangerous as to require the statutory protection, from the single fact that it inflicted injury. In the Powalske case, the opinion says the statute plainly contemplated that the proprietors of factories, in determining whether they should screen a particular piece of machinery, ought to bring to bear on each instance, their prudence and intelligence; and that the correlative of this rule was, that whether or not the unguarded shaft which did the damage was dangerous within the meaning of the statute, was not to be determined, nor even necessarily influenced, by the fact that the plaintiff was hurt. So the court of Queen's Bench in Hindle v. Birtwistle said it would

be impossible to declare, because an accident had once happened, that the machinery was dangerous; that the frequency of the contingency must be considered. In Dillon v. Coal Co., 181 N. Y. 215, it was declared as a legal conclusion from the facts, that the defendant had not violated the statutes by failing to guard a shaft fourteen feet above the floor. In the other cases cited from the New York Reports, on facts quite similar to the case at bar, the danger was held to be so obviously remote as to justify the court in pronouncing, as a matter of law, that the statutory guard was not required. In our opinion, the same conclusion is to be drawn from the facts in the present case. There was no evidence introduced to warrant the jury in inferring that the appellant company might have anticipated any kind of injury to Findlay, or any one else on the first floor, from the unguarded belt around the overhead drum among the joists; particularly an injury due to the tearing in two of the belt and the consequent flying down of a broken end into the room. This is not a case in which the accident itself bespeaks negligence, for it would not necessarily occur to a careful person that the belt might break and an end hurt some one. [Holt v. Railway Co., 84 Mo. App. 443.]

The judgment is reversed and the cause remanded. All concur.