ALSCINOUS LANG, by Next Friend, Respondent, v. KANSAS CITY BOLT & NUT COMPANY, Appellant.

Kansas City Court of Appeals, May 4, 1908.

1. **MASTER AND SERVANT: Guarding Machinery: Factories: Ordinary Service.**    Section 6433, Revised Statutes 1899, requiring dangerous machinery to be guarded applies only to such machines as are dangerous to employees while in the performance of their ordinary duty.

2. ———: ———: ———: ———: **Action.**    A servant running a bolt pointing machine which was safe and properly guarded, was directed by his foreman to take an oil can to the superintendent, who, on delivering the same requested him to place it in a certain place on an unguarded machine he was repairing, when in so doing the servant was injured.    *Held,* he had no cause of action under the statute, since he was not engaged in his ordinary duty and had left a safe place for a dangerous one, and his action was a common law one for giving a negligent order.

Appeal from Jackson Circuit Court.—*Hon. John G. Park,* Judge.

REVERSED.

*Walter Littlefield* and *Harkless, Crysler & Histed* for appellant.

(1)    The mere absence of the guard or shield over the gearing and cogs did not establish negligence *per se* or show that it was the proximate cause of plaintiff's injury.  Loehring v. Construction Co., 118 Mo. 163, 179.
(2)    The cogs and gearing of the threader were manifestly not designed as a safe or reasonable repository for the can, and plaintiff had no right to attempt to make such use of them.  Defendant can not be held to blame in not anticipating and guarding against such an abuse.  Kelley v. Lawrence, 195 Mo. 75; Holmes v. Brandenbaugh, 172 Mo. 53, and cases cited.  (3)    The

evidence conclusively showing that the cogs and gearing of the threader were located at a point remote from contact with plaintiff, and that he was not required in his ordinary duties to work around or anywhere near them, and that he went entirely outside of his ordinary duty. Strode v. Columbia Box Co., 101 S. W. 1099; Meifert v. Sand Co., 101 S. W. 1103; Webbs Pollock on Torts, 45, 46; Brewing Co. v. Talbot, 141 Mo. 684. (4) Plaintiff chose this machine upon which to try the experiment of placing the can between the cogs and gearing because of the fact that it was the only one unguarded and therefore the only one to which the cogs and gearing were possible to access. He can not now complain of the existence of the very condition which made even his attempt possible. Rigsby v. Oil Well Supply Co., 115 Mo. App. 299; Goransson v. Mfg. Co., 186 Mo. 300; Wilson v. Railroad, 122 Mo. App. 667. (5) The statute was never designed to cover such a situation. (6) Sampson, although called by plaintiff a foreman, had no control over him. Lang went to Sampson because Goodman, the belt lacer, told him to. This would not charge the defendant with the consequences of any directions which Sampson might conclude to give the plaintiff. (7) The plaintiff was guilty of gross negligence. Plaintiff had neither the legal nor moral right to put his limb to such a hazard. Smith v. Box Co., 193 Mo. 716; Doerr v. Brewing Co., 176 Mo. 547; Railway v. Crotty, 141 Fed. 916; McGahan v. Transit Co., 201 Mo. 500.

*Noyes, Heath & Walls* for respondent.

(1) The failure to safely guard cogwheels and gearing, when it is possible to do so, is negligence *per se;* and when a plaintiff has shown that he was injured for want of such guards, he has made out a prima-facie case. Colliott v. Mfg. Co., 71 Mo. App. 171; Bair v. Heibel, 103 Mo. App. 634; Stafford v. Adams, 113 Mo.

App. 721; Millsap v. Beggs, 122 Mo. App. 7; Lore v. Mfg. Co., 160 Mo. 622. (2) Defendant insists that it had the right to violate section 6433 and leave the cogwheels of the threader unguarded, because it was not plaintiff's ordinary duty to go into the walk and place the can on the threader as directed by foreman Sampson. Let us consider the above proposition with the facts in the case, and the law of this State. Plaintiff had been in defendant's employment around and in its factory for a year before his injury; he was a boy and not skilled in any particular work; and had done several different kinds of work for defendant in its factory. At one time plaintiff was sorting nuts, at another time he was putting nuts onto bolts, another time he had worked on a threader. The day of the injury he had commenced to work on a pointer, when the belt came off, then he reported the fact to the general foreman, Steel, who sent him to Sampson, his immediate foreman, who in turn sent him to the belt lacer. In fact it was the ordinary duties of plaintiff to obey his foremen, as they sent him from one work to another. He had no special duty or special work, his ordinary duties were whatever his foreman told him to do. Obedience is the ordinary duty of all servants and employees. As was said by our Supreme Court in case of Stephens v. Railway, 96 Mo. 213; Shortel v. St. Joseph, 104 Mo. 120.

BROADDUS, P. J.—This is a suit to recover damages for an injury alleged to have been received, by reason of the failure of the defendant to comply with section 6433, Revised Statutes 1899. The defendant is a corporation engaged in operating a manufacturing and mechanical business in Kansas City, Missouri. The plaintiff, a boy of about fourteen years of age, was at the time of the alleged injury in the defendant's employ, and operating a machine called a pointer, which was

used to point iron bolts. This machine and eleven others were situated in a large room between seventy-five and one hundred feet square. They were placed in a row extending north and south about three feet from the east wall of the building, the machines fronting west, and were placed so close together that a person could barely pass between them, and each sat on a table about five feet square. Extending across the back of each table were two bearings sixteen inches apart which supported three spindles, back of which was a gearing and shaft with two pulleys. The shaft had three pinions which drove the gearing which caused the machinery operating on the bolts to rotate and revolve. The operator of the machine stood in front.

All the machinery was safely guarded except one from which the guarding had been removed a short time prior to the 17th day of April, 1903, for the purpose of repairing it. The repairs had been finished, but the guard had not been replaced at the time of plaintiff's injury.

While plaintiff was operating his machine the belt came off, of which fact he notified Mr. Steel, defendant's general foreman, who directed him to go to Mr. Sampson his immediate foreman, who directed him to go to a person called a belt lacer whose duty it was to look after the belting in the establishment, and keep them in running order. The plaintiff reported the matter to the belt lacer who put the belt on, at which time he was called elsewhere, whereupon, he gave to plaintiff a small can of belt oil and directed him to apply it to the belt, and then take the can to Sampson. After applying the oil, plaintiff took the can to Sampson who was setting dies on the threader from which the guards had been removed. The latter told plaintiff to put the can on the back part of the threader and pointed to the place where he wanted it put. There was a flat iron surface running along on the back part of the

machine which was used for a place of deposit for tools, nuts and such like things, which was the place where Sampson had directed plaintiff to put the oil can. Plaintiff in order to get to the place to which he was directed was compelled to pass between two of the machines on a plank over a trough containing a liquid used on the material being manufactured into bolts and other articles, and in doing so he had to assume a stooping posture.

It was shown that the space between the back of the machines and the wall was used only when it was necessary to repair the machinery or when it became necessary to put on or take off the belting. It was no part of the duty of plaintiff or others operating the machine to repair the machinery, there being a machinist for that purpose, and it was the duty of the belt lacer to look after the belting. It was shown that the guards that had been put on the machines had been placed upon them at a time when they were differently placed and were dangerous to the employees if left unguarded, but it is contended that since they occupied their new position with reference to the wall back of them as we have described and the space between the wall and the machines not being used by the operators as has been stated there was no real necessity for such guards.

The statute reads as follows: "The belting, shafting, gearing and drums, in all manufacturing, mechanical and other establishments in this State, when so placed as to be dangerous to persons employed therein or thereabout while engaged in their ordinary duties, shall be safely and securely guarded when possible; if not possible, then notice of its danger shall be conspicuously posted in such establishments."

The object of the statute was not to require guards in all cases but only in such cases where the machinery would be dangerous to persons employed while engaged

in their ordinary duties. It is apparent that the machines as placed and guarded by the wall in the rear could not have been in any sense dangerous to defendant's employees operating the machines, that is, while in the performance of *their ordinary duties*. No one in the discharge of their ordinary duties were required to go into the space between the wall and the backs of the machines except the belt lacer and the machinist. And those persons by the nature of their employment, assumed all the risk incident to their employment, and so far as they were concerned it was immaterial whether they were or were not guarded. The operator who stood in front of his machine was in no danger from the belting, shafting, gearing and drums, several feet away on the back of the table before him, as he did not have to reach to or over them in the performance of his labor. In a recent case decided by the St. Louis Court of Appeals similar in principle it was held that the plaintiff was not entitled to recover, on the ground that the machinery was so placed that no danger to employees would be expected by a prudent man, and that, "if an appliance is so located that employees can not come in contact with it while running, without going out of their way, the statute does not require it to be guarded." [Strode v. Columbia Box Co., 124 Mo. App. 511, 101 S. W. 1099.] And such is the holding in Meifert v. Sand Co., 101 S. W. 1103, 124 Mo. App. 491; Loehring v. Construction Co., 118 Mo. App. 163.

But aside from what has already been said, admitting that the machinery was of such a character as to make it dangerous to the employees and such as the statute required to be guarded, the plaintiff would not be entitled to recover in this form of action, for the reason that he was not injured while engaged in the discharge of his ordinary duties. It was not a part of his duty to look after the oil can and so far as the evidence goes the occasion in question was the only time

he ever had anything to do with it whatever. In order to deliver the can he left his own machine where he was in safety because it was guarded and went to another that was unguarded and at the direction of his foreman attempted to put it in a place that was surrounded with danger. He was not in the discharge of his ordinary duty, or any duty that he had ever before performed. Although it may have been his duty to obey the direction of his foreman, it did not render defendant liable under the statute. The negligence, if any, consisted in the act of the foreman in directing him to perform a dangerous duty which was common law negligence. The cause is reversed. All concur.