## SARAH E. DUNNIVENT, Respondent, v. JOHN FINN et al., Appellants.

**Kansas City Court of Appeals, May 3, 1915.**

**NEGLIGENCE: Contributory Negligence: Machinery: Guard: Laundry.** Defendants operated a laundry. The ironing machine was guarded on the side in which articles were inserted between revolving rollers. This was called the feeding side, and the other side where the articles were expelled from the rollers onto a table and folded, was the receiving side and was not guarded because the rollers revolved outwardly. An experienced employee on the receiving side, undertook to put an article between rollers on the feeding side by reaching over. Her hand was drawn in and her fingers mashed. It was *held* that she was guilty of contributory negligence.

Appeal from Randolph Circuit Court.—*Hon. A. H. Waller,* Judge.

REVERSED.

*M. J. Lilly* for appellant.

(1) The mangle machine on which plaintiff was injured was safely and securely guarded insofar as it was dangerous to persons, engaged in their ordinary duties, employed thereabout. Sec. 7828, R. S. 1909;

Lang v. Bolt & Nut Co., 131 Mo. App. 146. (2) Conceding that plaintiff was directed to feed articles of laundry into the mangle the way she was feeding the mangle at the time of her injury by one of the defendants and that it may have been her duty to obey such direction, defendants are not liable under section 7828, R. S. 1909, on which plaintiff bases her right of recovery. Lang v. Bolt & Nut Co., 131 Mo. App. 146.

*J. M. Jeffries, Hamp R. Rothwell* and *Gilbert Lamb* for respondent.

(1) All of the testimony in the case shows that it was the established custom in defendants' laundry for the employees, including plaintiff, to feed the mangle from the side on which there was no guard and the side on which plaintiff was working; that defendants had knowledge of this custom by directing that plaintiff feed from that side, and from seeing respondent feed from that side. The evidence conclusively shows that feeding from the side on which there was no guard was one of respondent's ordinary duties. Simpson v. Iron Works Co., 249 Mo. 389; Crawford v. Stock Yards Co., 215 Mo. 394; Collins v. Paper Mill Co., 143 Mo. App. 339-340; McGinniss v. Printing Co., 122 Mo. App. 231-232; 26 Cyc. 1433; Millsap v. Beggs, 122 Mo. App. 9; Colliott v. Mfg. Co., 77 Mo. App. 170. (2) The question of the respondent's contributory negligence was submitted to the jury and upon the whole case they found that the failure of defendants to guard the machine was the proximate cause of the injury. The verdict of the jury is conclusive on this point. Section 7828, R. S. 1909, is a remedial statute and failure to comply with it is negligence. Stafford v. Adams, 113 Mo. App. 717; Winfrey v. Ragan, 136 Mo. App. 250; Henderson v. Kansas City, 177 Mo. 492-493; Lore v. Mfg. Co., 160 Mo. 608; Colliott v. Mfg. Co., 77 Mo. App. 170; Millsap v. Beggs, 122 Mo. App. 1; Strode v. Box

Co., 124 Mo. App. 520; Simpson v. Iron Works Co., 249 Mo. 407. Requiring the jury to find the defendants gave this direction, showed the custom to work there; showed the acquiescence of defendants and their knowledge of the fact that employees did work on that side of the machine, and was therefore proper. Millsap v. Beggs, 122 Mo. App. 9.

ELLISON, P. J.—Defendants operate a public laundry and plaintiff, while in their employ, suffered an injury to her hand. She brought an action for damages under section 7828 of the Safety Statute 1909, and recovered judgment for $1000 in the trial court.

That statute reads as follows: "The belting, shafting, machines, machinery, gearing and drums, in all manufacturing, mechanical and other establishments in this State, when so placed as to be dangerous to persons employed therein or thereabout while engaged in their ordinary duties, shall be safely and securely guarded when possible; if not possible, then notice of its danger shall be conspicuously posted in such establishments."

A part of the machinery of the laundry was a "mangler" consisting of four rollers, one about eighteen inches in diameter and the other three about six inches, the large one being heated hot with steam. The large one was run by belting and it turned the three smaller ones by friction. Pieces that had been washed would be fed in between the rollers on one side and be turned out onto a table on the other side, where they would be folded and then taken away. The former was known as the front or feeding side of the machine and the other as the rear, or receiving side. On the feeding side the rollers revolved in such way as to draw inwardly between them, while on the receiving side they revolved so as to throw out whatever had been "fed to them" from the front. So, in point of fact, a person's hand could only be drawn into, or between

the rollers, by inserting it, or allowing it to be caught, from the front or feeding side. But on that side there was a guard sufficient to prevent such happening; a guard answering the requirement of the aforesaid statute. But there was no guard on the receiving side.

Plaintiff was a woman of several years' experience in public laundry work and defendants knew little about it. They had only been engaged in the business about two weeks. On the day she was injured she was feeding the machine from the front. Her testimony was, and we must accept it as true, that while thus feeding the machine from the front and guarded side, as she put it, "the side you should feed from all the time," one of defendants asked her if she wanted help and she said she would like to have it when he said, "you go on the other side (rear side) as I don't know anything about it, and I will take this side" (front side). Presently he was called to the telephone and in starting away, he said to her, "You go ahead and I will be back in a minute." Before he got to the phone her hand was caught and drawn in between the rollers, mashing her fingers, making it necessary to amputate them.

Of course the query immediately arises, how could her hand be drawn into the rollers when she was on the side where the rollers expelled or threw things out? She answered, or explained that in this way: That she understood from what defendant said that he meant she was to again begin to feed and was to do so from the side she then was on, and that she reached over to the intaking or front side and attempted to insert an article between the first and second rollers, which were revolving inwardly, and her hand was caught and drawn in.

The statute under which the action is brought has been construed a number of times by the Supreme and Appellate courts of the State. [Simpson v. Iron Works, 249 Mo. 376; Fulwider v. Gas Co., 216 Mo. 582; Huss v.

Bakery Co., 210 Mo. 44; Lore v. American Mfg. Co., 160 Mo. 608; Millsap v. Beggs, 122 Mo. App. 1; Colliott v. Mfg. Co., 71 Mo. App. 171; Lang v. Bolt & Nut Co., 131 Mo. App. 146.

The machine in this case was dangerous to persons employed "thereabout while engaged in their ordinary duties" of feeding it with articles being laundered; and it was therefore securely guarded by defendants so that one could not get his hand drawn into it, while engaged in his ordinary duty. It was not guarded on the opposite side, because no harm could be received from that side. It was not "dangerous to persons employed" on that side. The State Inspector testified that the machine was properly guarded and that it was not necessary to guard on the rear side "because the rollers are turning the opposite way; the cloth is coming out."

But there is this further consideration to be had in the case. There was evidence tending to prove that defendants knew, even in the short time they had been engaged in the business, that different employees, including this plaintiff, had fed the machine from the rear side as in this case, and from this the conclusion is drawn that as defendants had knowledge that the machine was sometimes operated in that way, it was their duty to guard the *top* rollers, revolving *above* the guard slab, which was the place where plaintiff's fingers were drawn in.

We will not say, that though a machine is safely guarded for its proper and ordinary use, operated from the proper place, it might not become the duty of the proprietor to guard it at other places, if he knew that employees were operating it, or performing their ordinary duties, at such other parts of the machine. The case made by plaintiff does not require a decision of that question. For here, defendant had directed plaintiff to cease performing the duty of feeding and to go around to the rear and receive and fold articles as

they were expelled onto the table by the machine. She did so and then he was signalled to the telephone. She relies on his remark as he started away, as an order for her to begin to feed *from that side*. As to that remark, "You go ahead and I will be back in a minute," she testified that "he didn't come out in words and tell me to feed," but "as he told me to go on the other side and told me to go ahead with the work, what could I do and stay there but to go ahead and do it; when he first came to the mangler (machine) he told me to go on the other side (rear) and work with him, that he didn't know anything about that side." We cannot give an unnatural and unreasonable interpretation to language in order to find evidence with which to sustain a verdict. As we stated at first, plaintiff was a woman of more than twelve years' experience as an employee in a laundry. Defendant's experience was two weeks and he told her of his ignorance of the work. Now when he said to her "You go ahead, I will be back in a minute," what reason could there be in thinking he meant for her to feed the machine at all, since he was coming back immediately to resume feeding himself. But if we should allow that she had a right to interpret his remark as meaning she should feed, are we to go further and say he intended she should do so from the wrong side? If she was to go ahead and feed, of course it would be expected she would go around (as she expressed it) to "the side you should feed from all the time."

It is manifest to us that the machine was properly guarded, that defendants were not at fault and that plaintiff's injury was caused by her negligence, and we think defendant's demurrer to the evidence should have been sustained. The judgment will be reversed. All concur.