CARL WILLADSEN, Appellant, v. BLUE VALLEY CREAMERY COMPANY, Respondent.

Kansas City Court of Appeals, May 26, 1919.

1. **MASTER AND SERVANT: Factory Act: Unguarded Machine: Evidence.** In an action by a servant against his master based upon the latter's failure to comply with Section 7828, Revised Statutes 1909, which provides that the master should guard all machinery in the factory when so placed as to be dangerous to persons employed therein or thereabout, while engaged in their ordinary duties, where the evidence shows that plaintiff was working within nine and a half inches of the machine. *Held,* it was error to rule as a matter of law that the machine was so placed as not to be dangerous to the plaintiff.

2. ———: ———: ———: **Ordinary Duties.** Where defendant's foreman testified that it was part of plaintiff's duties to open and

close the window in front of which the machine in question was placed and there was evidence showing that plaintiff in the presence of the foreman opened and closed the windows at various times, *held*, the opening and closing of the windows was one of plaintiff's ordinary duties within the meaning of Section 7828. Revised Statutes 1909.

3. ———: ———: ———: **Contributory Negligence.** Where there are two ways of performing a duty, one more dangerous than the other, as a matter of law it cannot be ruled that because the plaintiff chose the former he was guilty of contributory negligence.

Appeal from Buchanan Circuit Court.—*Hon. Charles H. Mayer*, Judge.

REVERSED AND REMANDED.

*C. F. Strop* and *Graham & Silverman* for appellant.

*Culver & Phillip* for respondent.

BLAND, J.—This is a suit for personal injuries brought under the Factory Act, section 7828, Revised Statutes 1909. At the close of all the evidence the court sustained a demurrer to the evidence and plaintiff has appealed.

The facts show that plaintiff, a man forty-four years of age, was injured by his hand coming in contact with the blades of a fan, resulting in the loss of all the fingers of his left hand except the little finger. The circumstances of the accident are as follows: Defendant, plaintiff's employer, operated a creamery and butter factory in St. Joseph, Missouri, in which plaintiff worked. It was plaintiff's principal duty to make the "starter," which was a culture to sour milk. In the room where plaintiff was working there was a window composed of two sashes in each of which were four 14 x 20 inch panes; immediately in front of the upper sash of this window was the fan in question. The purpose of the fan was to draw vapor and impure air from the room. In making the "starter" plaintiff

worked upon a table that stood partly on the sill of this window. After plaintiff had made the "starter," if he had any spare time, it was his duty to help put the cream in the vats and in the churns. Defendant's foreman testified that it was the duty of a number of men in the plant to see that the window was kept in proper position as to being open or closed, and that this was one of plaintiff's duties. Ordinarily when the fan was in operation the upper sash of the window was open and when the fan was not revolving the window was ordinarily closed.

At the time plaintiff was injured the fan was in operation and the upper sash open. Plaintiff, noticing that a number of flies were coming into the room through the open window, proceeded to close the same in the following manner: he got up on the table on his knees, reached either with his left hand or with both hands to the middle frame of the upper sash and closed the window, he then put his right hand to his right side on the table and started to get down therefrom, before bringing his left hand back from the position it was in on the window, and in some manner got his hand into the blades of the fan, resulting in the injury described.

The table upon which plaintiff knelt was thirty inches in height; the window was in a recess seven inches deep and the table extended into this recess and seventeen and a half inches further out into the room, making the table twenty-four and a half inches in width. The length of the table was thirty-six inches, the width of the window. Sunk in the upper part of the window space was the revolving fan. In operation this fan attained a speed of 500 to 600 revolutions per minute. The blades of the fan were enclosed in an iron frame or rim. This rim, which was three inches in width, stood on a board two inches thick. The distance from the window sash to the face of the iron frame was thirteen and one-half inches. The fan was

thirty-eight inches in diameter; the blades thereof were sixteen inches long; the latter being attached to the hub in the center and were bowed toward the face of the fan and then back, so that the blades at their ends were three or four inches back from the face of the iron rim. Four and three-fourths inches above the rim the blades extended into the room beyond the face of the fan one inch. This was the nearest point of the fan to the floor of the room, where the blades extended to and beyond the face of the fan. Measured perpendicularly, the bottom of the fan was six feet and nine inches from the floor; the distance from the floor to the nearest point that a person could reach the blades, measured perpendicularly, was six feet, eleven and three-fourths inches. The distance from the top of the table to the board upon which the rim of the fan rested was forty-eight inches, the distance from the latter point to the place where the blades of the fan extended out one inch was nine and three-fourths inches; the distance from the rim of the fan to the points of the blades was three or four inches; the rim was half an inch thick.

Defendant contends, first, that it was not required to guard the fan because it was not so placed as to be dangerous to the plaintiff while engaged in his ordinary duties; second, that plaintiff was not injured while in the performance of his ordinary duties; and, third, that he was guilty of contributory negligence.

The Factory Act, section 7828, Revised Statutes 1909, provides that machines situated in factories in this State shall be guarded "when so placed as to be dangerous to persons employed therein or thereabout while engaged in their ordinary duties." Whether there is any causal connection between the failure to guard and the injury, is usually a question for the jury. [Austin v. Shoe Co., 176 Mo. App. 546, l. c. 572; Lohmeyer v. St. Louis Cordage Co., 137 Mo. App. 624; Henderson v. Kansas City, 177 Mo. 477, l. c.

493; Shaw v. Kansas City, 196 S. W. 1091.] But
when the evidence has no tendency to prove that a man
of ordinary care would have foreseen the danger
present by reason of the machine being unguarded the
question becomes one of law. ' [Meifert v. Sand Co.,
124 Mo. App. 491, l. c. 495; Strode v. Columbia Box
Company, 124 Mo. App. 511; Lang v. Bolt & Nut
Company, 131 Mo. App. 146.] Of the statute under
consideration, it was said by the supreme court in
the case of Cole v. North Amer. Lead Co., 240 Mo. 397,
l. c. 407-408:

"In our judgment this is one of the wisest and
most humane statutes to be found upon our statute
books, and should be given a broad and liberal inter-
pretation, because it is remedial and highly salutary,
intended to protect the employees from just such in-
juries as the one sustained by plaintiff in this case.
The Legislature knew that the human mind and con-
duct was such that a servant when in the performance
of his duties to his master, surrounded by dangerous
machinery, in motion, with his mind concentrated upon
his work, oblivious to his surroundings, is liable to
slip or take a mistep and fall into the revolving
machinery, or thoughtlessly thrust his hand or other
portion of his body in the gearing or other portion
of the machinery; and if not 'safely and securely
guarded,' he would in consequence thereof receive in-
juries of a serious character. It was the intention of
the Legislature and the object and purpose of the stat-
ute to put a stop to all such injuries which grow out of
such inattention, inadvertence, mishaps or accidents,
that is, such acts of omission.

This is clearly manifested and emphasized by the
last clause of this section of the statute. The Legis-
lature was so solicitous of those matters and of the
safety of the employees of such institutions, that it re-
quired, by this last clause, that when it was imposible
for the master to safely and securely guard the
machinery mentioned, notice of such dangers should be

conspicuously posted in such establishments; evidently for the purpose of continuously and potently calling their attention to the dangers surrounding them, and thereby make them more watchful of the machinery and careful in their action and motions about it.''

A review of the purposes of this statute was had in the following cases, and the reasoning of WOODSON, J., in the case last cited was fully sustained and amplified in Austin v. Shoe Co., supra, l. c. 563, 564, 565; Simpson v. Iron Works Co., 294 Mo. 376, l. c. 389-390; Turner v. Tyler Land & Timber Co., 188 Mo. App. 481, l. c. 492. It was stated in Yates v. House Wrecking Co., 195 S. W. 548, l. c. 551:

"The question, primarily, is not at what particular place is the machinery located, but rather is, where is it located with reference to the servant's ordinary duties. If, in the performance of such duties, he must go or reach in dangerous proximity to the machinery, it should be 'securely guarded when possible.' '' [See also, Lohmeyer v. Cordage Co., supra, l. c. 630.]

In urging as a matter of law that this fan was one not required to be guarded, defendant calls our attention to the fact that the fan was sunk in the wall near the top of the ceiling at such a distance from the floor that no ordinary man, standing on the floor, would come in contact with it; that defendant claims that plaintiff's *ordinary* duties were to put cultures in little glass jars on the table in front of the window and when he had spare time to help on the vats and churns, and that these duties did not take him near the fan; that he only opened and closed the windows occasionally; that there was evidence that one could stand on the floor and open and close the windows with one finger, the windows moving very easily; that on account of the fact that plaintiff was five feet, three inches in height it was impossible for him to have gotten his hand into the fan kneeling in the way plaintiff claims he knelt when he was injured; and that plaintiff's hand could not have been sucked into

the fan. Plaintiff testified that his hand got into the fan in that manner.

The evidence shows that while plaintiff's duties required him to devote most of his time in making cultures or the "starter," a portion of his time was devoted to putting cream in the vats and churns, and it was also a part of his duties to attend to the raising and closing of the windows. While plaintiff may have devoted but little of his time to the matter of attending to the windows and nearly all of his time to making the "starter," this fact did not make his attending to the windows other than one of plaintiff's "ordinary duties" within the meaning of the statute. Plainly it was one of plaintiff's ordinary duties to attend to the opening and closing of the windows and the evidence tends to show that it was proper for plaintiff to close the window upon the discovery that a number of flies were coming into the room.

One of plaintiff's witnesses, on cross-examination, testified that either sash of the window could have been raised by one finger by a man of the stature of plaintiff, standing on the floor in front of the table, but plaintiff testified that he was unable to do this, although he admitted that it was easy to raise the window. He said he was unable to close the window from the floor on account of the interference of the table, and the fact that the outer sash was the upper sash and that he could only reach the same by getting upon the table. On cross-examination plaintiff admitted that while standing on the floor he could raise the lower sash, then raise the upper sash and then bring down the lower sash, but he further testified that, nevertheless, the table would interfere with the doing of the work in that manner. It will be remembered that plaintiff was a man of small stature. Plaintiff was never directed to open and close the window but he had done so a great many times. He had been at work for defendant a year and a half. He testified that the foreman saw that he always closed the window

in the manner in which he closed it at this time; that the foreman had often seen him in the act of closing it and had never given him instructions to open or close it in any other way. As already stated, the foreman testified that it was one of plaintiff's duties to open and close the window. Defendant makes the point that plaintiff did not testify that the foreman saw him open and close the window at any time when the fan was in operation. Plaintiff did not explain whether the fan was or was not in operation at any of the times, and we are not justified in assuming that it was not, but it is more reasonable to suppose that it was on account of the numerous times that plaintiff had been seen by his foreman performing the act, and this, even though there was evidence that the window was usually closed when the fan was not in operation and open when it was in operation.

We think that defendant could reasonably have anticipated that plaintiff might thoughtlessly or otherwise come in contact with the blades of the fan while performing his duties in reference to the opening and closing of this window. This even though plaintiff had often done the work without being hurt. We are unable to say as a matter of law that a man five feet, three inches in height in kneeling in the manner that plaintiff was, could not extend his hand fifty-seven and one-half inches from the table on which he knelt; we think that the fact that the distance from the window frame which plaintiff operated with his hand to the edge of the recess under the fan, was thirteen and one-third inches and the fact that he had to extend his hand an additional nine and one-half inches above that point before he could reach the portion of the fan that could do him harm, did not make the fan such a remote place from where plaintiff was required to work that we could say as a matter of law that defendant could not have reasonably apprehended that plaintiff might have gotten his hands into the same. As was stated in Yates v. House Wrecking Co., supra, "If in the performance

of such duties, he (the servant) must go or reach in dangerous proximity to the machinery, it should be 'securely guarded when possible.' "

Plaintiff testified that in closing this window he had to bend over in the recess; in other words, that the board upon which the fan sat was lower than his head when he was kneeling on the table and straightened up. We cannot say that it was altogether unnatural for plaintiff. to bring his hand back under the top of the recess while in the act of getting off the table. Plaintiff testified that he was looking down while getting off the table and that he did not have his mind upon the fan, although he knew it was present and dangerous, but was thinking more of the window at the time he was injured. The fan itself was within fifteen and one-half inches of where plaintiff placed his hand upon the .window and the blades thereof twenty-three and one-fourth inches. Plaintiff testified that he was kneeling *before* the fan. When he withdrew his head it must have been in the neighborhood of nine and one-half inches of the dangerous portion of the fan, and we might reasonably say that plaintiff was working within nine and one-half inches of a very dangerous piece of machinery that was left unguarded by the defendant. We would have to go to an extreme length to say as a matter of law that this distance rendered the fan dangerous to plaintiff. Here was a very dangerous piece of machinery to one coming in contact with it while engrossed in his work. Whether defendant could have reasonably apprehended that plaintiff would have come into contact with the fan in closing the window does not depend on whether defendant could have foreseen. the very manner in which plaintiff did· the work. Defendant might have reasonably anticipated that plaintiff would have even stood .on the table to close the window. To some persons it is very uncomfortable, if not painful, to stand on the knees. It would have been no more than natural for plaintiff ·to have stood on the

table to accomplish the closing of the window. If plaintiff had stood on the table and turned around in the act of getting off and through some cause had slipped or lost his balance and had inadvertently grabbed for support and his hand had gotten into the fan, would it be reasonably contended that defendant would not be liable? It is true that there is no testimony in this case that plaintiff lost his balance, slipped or involuntarily threw up his hand, but, as stated in Cole v. Lead Co., supra, "The object and purpose of the state was to put a stop to all such injuries which grow out of such inattention, inadvertence, mishaps or accidents." So it makes no difference whether plaintiff slipped, lost his balance or threw up his hand, if in withdrawing his hand he, through inadvertence, inattention, mishap or accident, extended his hand above his head and came into contact with the unguarded machine.

It is true that plaintiff testified that the fan sucked his hand into the blades and that in order for there to be any suction from the fan it was necessary to place an object in front of the same. He testified that he did not know how he got his hand in front of the fan; that he withdrew his hand back from the window frame, and, as we have already said, that he was looking down and did not have his mind upon the fan but rather upon the window. There was evidence to show that it was impossible for plaintiff's hand to have been sucked into the fan. Several witnesses held a folded newspaper within three inches of the fan and they testified that the suction did not cause the paper to move. While in plaintiff's brief his counsel do not entirely abandon the theory that plaintiff's hand was sucked into the fan, they argue that it was immaterial how his hand got into the fan; that the jury could well find under the evidence that plaintiff was mistaken in saying that his hand was sucked into the fan and that it might have found that it got caught in the fan through thoughtlessness and inadvertence on the part of plaintiff in

extending his hand up to a position where it could be caught.

Plaintiff endeavored to explain how his hand was caught in the fan, and whether or not he was honest in his statement that it was sucked into the same is immaterial in disposing of the demurrer to the evidence. Apparently plaintiff was an ordinary workman and was not familiar with the laws of physics. He did not see what happened to his hand but felt the suction of the fan and knew that his hand was injured. It may be that plaintiff did no more than give his best judgment as to how his hand got into the fan, although it does not seem possible that his hand could have been sucked into it. Apparently he was either mistaken or intentionally falsified about it being sucked in, but as defendant would be liable whether the hand was sucked in or got in through some inadvertence or thoughlessness on the part of plaintiff, we fail to see what bearing plaintiff's testimony that it was sucked in has upon the case, except as going to his credibility as a witness, which was for the jury to consider. Plaintiff was not required to show the exact manner in which his hand got into the fan and his testimony that it was sucked in was for the attention of the jury.

Defendant urges that plaintiff was guilty of contributory negligence, for the reason that he knew the fan was dangerous and unguarded and plaintiff was a mature man and had worked under the same condition for eighteen months, and that he could have raised the lower window easily while standing on the floor, while it was dangerous for him to kneel upon the table as he was doing in this instance. We have already detailed the reasons given by plaintiff as to why he knelt upon the table and did not stand upon the floor in closing the window. But it is contended by defendant that it is inherently unbelievable that a man even of plaintiff's stature in closing the window while standing on the floor would be interfered with by a table thirty inches in height and twenty-four inches wide, and as plaintiff

had two methods of closing the window, one a safe one (while standing on the floor) and the other an unsafe one, and as he chose the latter he was guilty of contributory negligence as a matter of law.

Assuming that plaintiff could have closed the window without hindrance while standing on the floor, as stated in Turner v. Tyler Land & Lumber Co., supra, l. c. 494, "Even if it be true that there are two methods of doing a thing, one of them less dangerous than the other, it does not follow that plaintiff is negligent or at fault because he happens to select the more dangerous." In this case plaintiff's foreman often saw plaintiff close the window in the same manner plaintiff closed it on this occasion. The foreman's conduct in permitting the work to be done in this manner amounted to defendant's sanctioning that way of doing the work. [McCaffrey v. Glue Co., 143 Mo. App. 24; Lindelof v. Hoagland Wagon Co., 186 S. W. 537; Corry v. Majestic Mfg. Co., 193 Mo. App. 77, l. c. 87.] The manner of doing it was not glaringly dangerous. We think that under the circumstances he clearly was not guilty of contributory negligence as a matter of law. [Turner v. Tyler Land & Wagon Co., supra; Daniels v. Goeke, 191 Mo. App. 1; Yates v. House Wrecking Co., supra; Shaw v. Kansas City, supra, l. c. 1095.]

The judgment is reversed and the cause remanded. All concur.